STATE of Iowa, Plaintiff-Appellee,

v.

Charles Gene HARTMAN,
Defendant-Appellant.

No. 61690.

Court of Appeals of Iowa.

May 31, 1979.

Henry M. Keyes of Keyes & Crawford, Cedar Rapids, for defendant-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, and Thomas D. McGrane, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C. J., and DON-IELSON, SNELL, CARTER and JOHN-SON, JJ.

JOHNSON, Judge.

Defendant, Charles Hartman, appeals from a jury conviction for larceny in violation of section 709.1, The Code 1977. In his motion for new trial, which trial court overruled, he asserts that the trial court erred: 1) in admitting into evidence statements first made by defendant to his parole officer because a parole officer is a counselor subject to the testimonial privilege provisions of section 622.10, The Code; 2) in refusing to suppress similar statements later made to a police officer, while in his parole officer's presence, without a knowing and intelligent waiver of his constitutional rights; and 3) in allowing the jury to consider the case when there was insufficient circumstantial evidence to warrant submitting it to the jury. We affirm.

Defendant, a parolee in 1977, was suspected of the theft of two tires from a Cedar Rapids service station. A witness, who was unable to identify the person, saw someone load the tires into a car at a time when defendant admittedly and circumstantially had custody and control of the vehicle. Based on identification of the car, Cedar Rapids police questioned defendant about the theft on September 30, 1977. Prior to being questioned, defendant was read his *Miranda* rights, signed a written waiver of those rights, and voluntarily cooperated with police in a non-custodial interrogation. Defendant's parole officer learned of defendant's suspected involvement in the larceny and questioned him about it on October 4, 1977, without reading to him his *Miranda* rights or providing him an opportunity to waive his rights. The parole officer asked defendant to take a polygraph test but he stated he could not for the reason that, even though he had not taken the tires, he knew who had done so. At trial defendant testified that he was told by his parole officer's secretary to show up at the Cedar Rapids police station on October 24, 1977, for a second interview "or else" and that he was under the impression he could not leave once at the station. Immediately prior to the second questioning, and in the presence of the parole officer, defendant was presented with a waiver of *Miranda* rights form which he signed. Defendant testified that he understood the paper's content to be the same as on his

previous visit to the station, that he understood the provisions, that he knew he was waiving the rights stated therein and that he subsequently did not ask for an attorney.

I.  On appeal defendant first asserts that his statements to his parole officer regarding his knowledge about the tires are protected by the statutory privilege extended to counselors, among others, under section 622.10, The Code 1977, and consequently should have been excluded as evidence. Section 622.10 deals with testimonial privilege and extends this privilege to a practicing attorney, counselor, physician, surgeon, or the stenographer or confidential clerk of any such person who obtains such information by reason of his or her employment, a minister of the gospel or priest of any denomination, or qualified school guidance counselor. While this explicit list does not include a parole officer, defendant urges this court to find that the term "counselor," for policy reasons, should include such a person.

■  To fall within section 622.10 protections, the communication must be confidential, entrusted to the described person in his or her professional capacity, and "necessary and proper to enable him [or her] to discharge the functions of his [or her] office according to the usual course of practice or discipline." *Allen v. Lindeman*, 259 Iowa 1384, 1390, 148 N.W.2d 610, 614 (1967). Even in light of the fact that the section is to be liberally construed, *Allen v. Lindeman*, 259 Iowa at 1390, 148 N.W.2d at 614, the court will not extend it beyond its intended parameters and will strive to limit its applicability only to situations that foster the theory behind the privilege. *See State v. Bedel*, 193 N.W.2d 121 (Iowa 1971) (factors necessary to activate physician-patient privilege); *Allen v. Lindeman*, 259 Iowa at 1391, 148 N.W.2d at 615 (theory for application of minister-penitent privileges); *Henke v. Iowa Home Mutual Casualty Co.*, 249 Iowa 614, 87 N.W.2d 920 (1958) (rule for privileged communication to an attorney is repose of confidence in the attorney).

In support of his contention, defendant cites 8 Wigmore *Evidence* § 2285 (1961)

which sets forth four requisites for establishment of a privileged relationship: 1) the communications must originate in a confidence that they will not be disclosed; 2) confidentiality must be essential to the full and satisfactory maintenance of the relationship between the parties; 3) the relationship must be one which, in the opinion of the community, ought to be sedulously fostered; and, 4) the injury which would enure to the relationship by disclosure must be greater than the benefit thereby gained. These prerequisites were discussed in *State v. Driscoll*, 53 Wisc.2d 699, 193 N.W.2d 851 (1972), in which the court, on grounds of public policy, rejected extension of the privilege to communications to social workers.

■  This court likewise rejects the theory that a parole officer should be deemed a party to whom the testimonial privilege is extended. The nature of parole is not a suspension of sentence but a lower grade of punishment. *Morrissey v. Brewer*, 443 F.2d 942, 947 (8th Cir., 1971), *rev'd. on other grounds and remanded*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971). To receive parole, the individual enters into a contract with the state. The parole officer is placed in a supervisory capacity to administer the contract. 770 I.A.C. ch. 26. To achieve discharge from parole, the parolee must receive a recommendation from the supervising parole officer 1) evaluating the risk to society presented by the parolee's unsupervised release and 2) determining any further assistance that might be rendered to the parolee. 770 I.A.C. § 26.-11(1)(3). *See also Morrissey v. Brewer*, 443 F.2d at 948 (broad discretion must be vested in a responsible body to enable it in each individual case, to balance the need to protect the welfare and security of society with the desirability of placing a convicted person on parole in order to promote his rehabilitation and restoration to a useful life).

■  While defendant's argument for the extension of the privilege to parole officers is not without merit, the language of section 622.10 speaks to confidentiality being "necessary and proper to enable   .   .   . [the professional] to discharge the functions

of his [or her] office." It is clear from the posture of ch. 26 I.A.C. and the cited cases that the paramount function of a parole officer is to protect the welfare and security of society as a whole through a supervisory, not confidential, relationship with parolees.[1] This position is more than sufficiently supported by the legislative decision not to include a parole officer among those persons expressly designated in section 622.-10 as one to whom testimonial privilege shall be extended. Trial court, therefore, properly admitted as evidence defendant's statements to his parole officer.

■ II. Defendant's second contention is that certain inculpatory statements made to his parole officer on October 4 and in the police interview on October 24 should be suppressed because he had not voluntarily and intelligently waived his constitutional rights. Prior to trial defendant moved to suppress statements made in the alleged custodial setting claiming they were made "unwillingly, while defendant was under duress and without regard to defendant's constitutional rights of custodial silence and presence of counsel." The motion was denied. Defendant raised the issue again in his motion for new trial.[2]

While defendant's motions are less than flawlessly drafted, we believe he has met his burden of preserving error with sufficient specificity to permit appellate review. See State v. Washington, 257 N.W.2d 890, 895 (Iowa 1977), cert. denied 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978). Neither is review precluded by defendant's failure to raise the issues at trial. An adverse ruling by trial court at the suppression hearing has been held sufficient to preserve error for appellate review even though there is no attendant trial objection to the controverted material when offered into evidence. State v. Hilpipre, 242 N.W.2d 306, 309 (Iowa 1976).

■ At the suppression hearing, trial court identified the asserted constitutional rights as those protected by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We interpret the "unwillingly, under duress and without regard to the defendant's constitutional rights" verbiage in defendant's motion as challenging both the voluntariness of defendant's inculpatory statements as well as the effectiveness of the waiver of the rights guaranteed by Miranda. See State v. Washington, 257 N.W.2d at 898 (McCormick, J., dissenting). Violation of Miranda rights and the voluntariness of subsequent statements, however, are separate issues. State v. Snethen, 245 N.W.2d 308, 311 (Iowa 1976).

■ Upon proper objection or motion the state must prove by a preponderance of the evidence that defendant's statements sought to be introduced as evidence-in-chief against him were made after an effective waiver of his Miranda rights and were made voluntarily. State v. Washington, 257 N.W.2d at 895. We make an independent review of the totality of the circumstances to determine if the burden has been met. State v. Cullison, 227 N.W.2d 121, 126 (Iowa 1975).

■ The prerequisite for activating Miranda is a custodial setting. It is uncontroverted that the September 30 interview was a non-custodial interview. Defendant focuses on the October 4 and October 24 interviews. On both occasions defendant claims he was subjected to duress and involuntary waiver of his constitutional rights.

■ Assuming, without deciding, that an Iowa parole officer is a peace officer within the contemplation of Miranda, it is necessary to examine the factual situation at hand to determine the applicability of Miranda.[3] It cannot be stated per se that a

1. The parole officer no doubt also provides some supportive counseling services to many parolees.

2. Defendant's motion stated that "the Court erred in its decision of the question of law raised prior to trial by the defendant's counsel's motion to suppress . . . ."

3. Section 247.24, The Code 1977, states that a parole officer has the power of a peace officer when making investigations or apprehending and returning persons granted a parole to any

parolee-parole officer exchange constitutes a custodial setting even though the parolee may be the prime suspect for a fresh crime. In this case, defendant appeared as a matter of course before his parole officer and was free to leave after his interview with her. The situation is thus analogous to a voluntary appearance at a police station for questioning by a parolee who is not subsequently restrained. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d (1977).

At the October 24 interview with both the parole officer and police officer present, defendant was not *read* his *Miranda* rights, but has evidenced that he scrutinized and understood a written waiver of them before signing the form; this is sufficient to comply with *Miranda*.

We also must determine whether this waiver was voluntary and whether the statements given at the police station were sufficiently voluntary to be admissible at trial. A parolee is no doubt under heavy psychological pressure to answer inquiries made by his parole officer. *United States v. Deaton*, 468 F.2d 541, 544 (5th Cir. 1972). The test of whether statements were voluntary is whether the behavior of the state's law enforcement officials was such as to overbear defendant's will to resist and bring about confessions not freely self-determined. *State v. Snethen*, 245 N.W.2d 308, 315 (Iowa 1976); *State v. Cooper*, 217 N.W.2d 589, 596 (Iowa 1974). We believe the record establishes that defendant understood the import of the written *Miranda* warning and voluntarily signed it. Further, he was aware of the crime under investigation, was of at least average intelligence, and had prior experience with the legal system. Based on these facts it also must be found that defendant's statements were voluntary. Having found the state has met its burden in this case, we conclude trial court properly admitted the statements as evidence.

III. Defendant's last contention is that trial court erred in overruling his motion for directed verdict when there was insufficient evidence of his guilt to generate a jury question. In such a case, the evidence on appeal is viewed in the light most favorable to the state to determine sufficiency to support a conviction. *State v. Overstreet*, 243 N.W.2d 880, 883 (Iowa 1976). Once rendered a jury verdict will be overturned only if contrary to the weight of the evidence. *State v. Herndon*, 257 N.W.2d 19, 22 (1977); *State v. Overstreet*, 243 N.W.2d 880 (Iowa 1976).

The State must prove all essential elements of a crime beyond a reasonable doubt and any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. *State v. Bone*, 201 N.W.2d 80, 81 (Iowa 1972). The evidence presented at trial showed that two tires were wrongfully taken from a service station and placed by someone in a car which fit the description, including registration numbers, of a car acknowledged by defendant to have been in his sole custody. Additionally, defendant testified that he had been at the scene of the crime at approximately the time the tires were taken. He also testified to knowledge of the identity of the person who took the tires. From this evidence the jury properly could conclude that defendant either committed the larceny or was the driver of the vehicle that was used and thus aided and abetted the larceny.[4] We find that a fair inference was raised as to defendant's guilt and that trial court was correct in overruling defendant's motion for directed verdict and submitting the case to the jury for its deliberation.

Trial court's judgment is affirmed.

AFFIRMED.

---

institution. Section 906.2, Code Supp.1978, states that "[p]arole officers . . ., while performing their duties as such, are peace officers and have all the powers and authority of peace officers."

4. Trial court gave an aiding and abetting instruction.