**In re the MARRIAGE OF Beverly J. GAUMER and Bruce L. Gaumer.**

**Upon the Petition of Beverly J. Gaumer, Appellant,**

**And Concerning**

**Bruce L. Gaumer, Appellee.**

**No. 63541.**

Supreme Court of Iowa.

March 18, 1981.

John B. Schuster of Roehrick, Lavorato, Schuster, Sullins & Hassel, Des Moines, for appellant.

G. Gregory Kelly and William F. Denman of Denman, Albers & Judkins, Des Moines, for appellee.

Thomas Hanson of Blanchard, Cless & Hanson, Des Moines, for minor children.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

LeGRAND, Justice.

The petitioner and respondent were married on November 8, 1952. They have six children, three now adults and three still minors. Their marriage was dissolved by decree on March 9, 1979. The decree awarded custody of the three minor children to respondent, Bruce L. Gaumer. It ordered the sale of the family home with equal division of the proceeds. It directed division of the personalty and provided that Bruce pay Beverly $1 per year as alimony. The appeal challenges only the custody and alimony provisions. We affirm.

Throughout the twenty-six year marriage of these people, Bruce has been steadily employed and Beverly has devoted her time almost entirely to the home, although she worked as a typist for a Des Moines insurance company until the birth of their first child. She also worked later for two very short periods as a waitress. At the time of the dissolution, the three minor children were Barbara, 17, Bernie, 15, and Bridget, 8. Bruce was given custody of all three. Only Bridget's custody is an issue on appeal.

For nine years prior to the dissolution, Bruce worked for his mother-in-law at the Krispy Crust Bakery. His salary was $18,000 a year plus bonuses. He also had the use of a company car. When dissolution proceedings were started, he left his mother-in-law's employ. He obtained other work at substantially reduced income, $10,800 per year. He again had the use of a company car.

The parties owned a homestead in Des Moines with an equity of approximately $30,000. This was ordered sold with the proceeds to be divided equally. Personal property consisted of a 1971 Volkswagen and household furnishings. This, too, was divided equitably. There is no appeal from the property division.

Beverly raises four issues:

(1) Error in permitting the attorney appointed to represent the minor children to testify concerning his recommendations to the court.

(2) Error in allowing Dr. Carol Barker, a psychologist, to testify concerning information obtained from Beverly during counseling sessions.

(3) Error in awarding custody of Bridget to respondent.

(4) Error in awarding the petitioner only $1 per year as alimony.

I. *Testimony of attorney for the children.* Thomas Hanson, an attorney, was appointed to represent the minor children as provided by section 598.12, The Code 1977 which we set out here:

The court may appoint an attorney to represent the interests of the minor child or children of the parties. Such attorney shall be empowered to make independent investigations and to cause witnesses to appear and testify before the court on matters pertinent to the interests of the children.

At the conclusion of the trial, he offered himself as a witness to either party with this statement:

I have interviewed all of the children, and with the court's permission would take the stand and offer myself as a witness if either [party] desires to examine me. Unfortunately, I'm in a position of being both an advocate here and also having some things which I wish to say, which will be done, I suspect, by way of argument. If either counsel wishes me to assume the stand, I'll be happy to do so.

Bruce's attorney then called Mr. Hanson as a witness. However, the court did not permit him to express his opinion on the merits of the case. When he was asked for his recommendations, Beverly's attorney objected and the court made this ruling:

I'm going to sustain the objection and permit Mr. Hanson to urge his position in argument. But I do think the questions of him now under oath ought to be limited to the foundation that he has to make, the argument he intends to make.

■ Beverly's complaint is that the court permitted Mr. Hanson to testify concerning his personal recommendations and that the decree was based in part on this improper testimony. This is contrary to the record before us. The trial court was careful to avoid any expression of opinion by Mr. Hanson, and properly so.

In *In re Marriage of Joens*, 284 N.W.2d 326, 329 (Iowa 1979), we said an attorney appointed to represent a child in dissolution proceedings should not testify. His function is to investigate and "cause witnesses to appear and testify on matters pertinent to the interests of the children." In another case, *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974), we said an attorney's report was a matter to be considered in deciding child custody. However, there the report was before the court by stipulation and any objection to its consideration was waived.

Like any other lawyer, a lawyer for children ordinarily has no personal information concerning the matter before the court. What he knows comes from others. They are the ones who should testify. Like any other lawyer, too, counsel for the children can present his view of the evidence by argument within proper limits. Beverly says Mr. Hanson's argument exceeded those limits. The arguments arguments were not recorded, and we have no basis upon which to review that claim.

We find no merit to Beverly's complaint.

■ II. *Testimony of psychologist.* Dr. Carol Barker, a psychologist, was permitted to testify for Bruce concerning certain facts obtained from Beverly while counseling her.

Section 622.10, The Code 1977, provides in part as follows:

No practicing attorney, counselor, physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, minister of the gospel or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline.

Beverly asserts this statute was violated by permitting Dr. Barker to testify, arguing the psychologist is a counselor as that term is used in the statute. We hold a clinical psychologist is not among those to whom the privilege of section 622.10 applies.

Statutes like section 622.10 provide certain exceptions to the general rule that the public is entitled to every person's evidence in judicial proceedings. *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186, 195 (1980). Section 622.10 has been part of our statutory law in virtually unaltered form since 1850. *See* section 2393, Code of 1851. As used in our statute, we are convinced "counselor" is simply another designation for an attorney.

When this statutory language was first adopted, counseling did not enjoy the general meaning it now has. Today we have

counselors in almost every area of life— school, employment, social services, and marriage, to mention a few. In earlier times the term was more limited. It was generally used to describe those engaged in the practice of law. *See* ch. 114, Rev.Code 1860. This is still its most common meaning. Ch. 610, The Code 1979. *See also Black's Law Dictionary* at 314 (5th ed. 1979).

Significant in this regard is the fact the legislature found it necessary to create a special privilege for school counselors by amendment to section 622.10 in 1974. *See* Acts of 65th General Assembly, ch. 1264 (1974). If Beverly's argument is valid, this new statutory exemption would have been totally unnecessary.

Many states have treated this question by statute, specifically recognizing the clinical psychologist-patient relationship as within the privilege. 8 Wigmore, *Evidence* § 2286 at 528, 532–33 (McNaughton rev. 1961); *see also* 1980 Pocket Supplement to Vol. 8, note 23 at 82; 81 Am.Jur.2d *Witnesses* § 238 (1972). Iowa has not done so.

In *State v. Hartman*, 281 N.W.2d 639, 642 (Iowa Ct.App.1979), the court ruled the privilege did not extend to parole officers, although conceding such an officer provides counseling service to those under his or her supervision.

In an earlier case, *In the Interest of Hochmuth*, 251 N.W.2d 484, 490 (Iowa 1977), we "assumed" (but did not decide) a psychologist was within the privilege. In that case any objection had been waived and it was unnecessary to decide the point.

We do not mean to question the qualifications of Dr. Barker. We merely point out some of the resulting problems if we expand the statute to include all who render counseling service in whatever context and for whatever purpose. If psychologists are to be granted such testimonial privilege, it should be done by the legislature, as was done in 1975 for school counselors.

III. *Custody of Bridget.* Bridget is the baby of this family. At the time of the dissolution decree she was eight years old.

Three of the other children are adults. One, Brenda, is twenty-four, married and has two children of her own. Bruce and Brian have both reached the age of majority. Barbara, seventeen, is living with her older sister, Brenda. Bernie, fifteen, is living with his father.

Bridget is well adjusted and has good relationship with each of her parents. She also gets along well with her brothers and sisters, particularly Brenda, who before her own marriage had provided much of Bridget's care. Brenda expressed a willingness to assist either parent in caring for Bridget after the dissolution.

Both Beverly and Bruce are described as good parents. Brenda and Brian, two of the adult children, testified their mother was a good parent but somewhat "unrealistic". She did not face problems, rather she ignored them. She was disposed to be moody and depressed. Both Brenda and Brian stated Bridget would be better off with her father.

The trial court was compelled to make a difficult choice between two good parents. We quote from his findings:

> The custody of the minor children is the most troublesome issue. Both parents love the children. The children love their parents. On the basis of the entire record the unstable, emotional state of petitioner tips the scale in favor of the respondent having their custody. He appears to the Court as the person best able to meet the physical, emotional, psychological and educational needs of the children. He also appears to be the person who can best utilize the assistance that the older children have offered the parents in rearing of the three younger children. It is undisputed that both Barbara and Bernard prefer to be in their father's custody. If Bridget's custody is not with her father she will be deprived of substantial amount of contact with her brother and sister.

We believe this accurately summarized the testimony relative to custody of all three minor children. As previously mentioned, only Bridget is the subject of dis-

pute and we have limited our inquiry accordingly. *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979.)

The trial court found that Bridget's best interests would be served by awarding custody of her father. We have reviewed the entire record and we agree that Bruce should have custody of this child.

IV. *Alimony*. At the time of the dissolution, Beverly was forty-four years old. Except for several short periods of employment as a waitress, she has had no employment outside the home for twenty-four years. The trial court awarded her $1 per year as alimony. It is apparent the trial court wanted to keep the question of alimony open for future modification and still encourage Beverly to become self-supporting. On June 28, 1979, we ordered Bruce to pay her $150 per month, beginning July 15, 1979, to continue until further order of this court or until the homestead was sold and the proceeds divided. The homestead has not yet been sold. We now order these payments to terminate on April 15, 1981. We affirm the alimony provision of the decree.

AFFIRMED.