**STATE of Iowa, Appellee,**

v.

**Paulino ALDAPE, Jr., Appellant.**

**No. 62498.**

Supreme Court of Iowa.

June 17, 1981.

John P. Roehrick and Ray Sullins, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., and Dan Johnston, Polk County Atty., for appellee.

Considered by UHLENHOPP, P. J., and HARRIS, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

Defendant, Paulino Aldape, Jr., appeals from his conviction of first-degree murder in violation of sections 690.1–.2, The Code 1977. We affirm.

On September 1, 1977, Douglas Furth was found dead in the basement of his home in West Des Moines. An autopsy revealed that Furth had been shot in the head twice with what was later determined to be a .22 caliber rifle. On September 8 the West Des Moines Police Department contacted the Plainview, Texas, Police Department and requested that agency's assistance in locating defendant, a minor at the time, for questioning concerning the homicide.

A writ for immediate custody was obtained by defendant's probation officer from the Hale County, Texas, Juvenile Court on the ground of a probation violation. Plainview police detectives arrested defendant at the home of his father-in-law on September 16. Later that day defendant signed a statement confessing his role in the Furth murder. On September 20 Iowa law enforcement officials went to Plainview and questioned defendant. Information in the nature of a confession was obtained and was reaffirmed in an interview conducted the following day.

Defendant was charged in Iowa, by a county attorney's information filed December 28, 1977, with first-degree murder in violation of sections 690.1–.2, The Code 1977. He was subsequently returned to Iowa and transferred from juvenile court to be tried as an adult in district court. Defendant filed a motion to suppress the aforementioned confessions, contending they were not given voluntarily. After a hearing, the trial court found that the confessions were voluntary and overruled defendant's motion.

At trial the State relied on alternative theories of first-degree murder—premeditated murder and felony murder. Evidence established that Furth, the deceased, picked up defendant, Richard Aldape, and a "white kid" in downtown Des Moines and took them to his home for the alleged purpose of homosexual activity. Defendant testified that he and his "wife" were in Des Moines without any money. Apparently, someone had told defendant that he could make money by, in effect, prostituting himself to homosexuals.

Richard Aldape, defendant's younger brother, testified that sometime after they arrived at the Furth residence the "white kid" took a rifle off a gun rack, loaded it with shells lying on an endtable, gave the rifle to defendant, and told him to fire it into the wall behind Furth, because Furth would not surrender his wallet as the "white kid" had instructed him to do. Defendant fired the gun into the wall. Furth was subsequently taken to the basement and shot in the head first by the "white kid" and then by defendant, after the "white kid" had threatened to shoot defendant if he did not shoot Furth.

Defendant substantiated Richard's testimony regarding the events surrounding the shooting but stated that the "white kid" fired the shot into the wall, and that Richard, not he, fired the second shot. Defendant testified that he did not actually see Richard fire the second shot, but that he ran to the basement after hearing shots fired, and Richard was holding the gun. Defendant further contended that the shooting occurred because Furth refused to take them home when it was getting late.

During trial defendant unsuccessfully moved for a mistrial because an allegedly prejudicial newspaper article appeared in the Des Moines Tribune. Defendant then moved for a judgment of acquittal on grounds of insufficiency of the evidence. This motion was also overruled.

Jury instructions were subsequently prepared by the court and presented to counsel. Instruction 8 incorrectly told the jury that

there were no lesser included offenses of felony murder; however, no objection was made. The jury returned a verdict of guilty of first-degree murder. Defendant thereafter, in a motion in arrest of judgment, again challenged the sufficiency of the evidence and attacked the voluntariness of the confessions. Defendant also moved for a new trial. Both of these motions were overruled.

Defendant was sentenced to life imprisonment on August 2, 1978. New counsel was then appointed for this appeal.

Defendant contends:

1. This court should adopt a per se rule of exclusion for confessions of a juvenile who has not consulted with an attorney, a parent, or another adult friend.

2. Even if a per se rule is not adopted, the trial court erred in concluding that, under the totality of the circumstances, the State proved the voluntariness of defendant's confessions beyond a reasonable doubt.

3. The trial court erred in submitting to the jury an instruction on felony murder.

4. The trial court erred in failing to sustain defendant's motion for a directed verdict of acquittal because the evidence was insufficient to engender a jury question.

5. Defendant was denied effective assistance of counsel.

*I. Validity of defendant's confessions.* Defendant attacks the validity of his confessions on two grounds. He first argues for a per se rule of exclusion for juveniles and secondly asserts that the State failed to prove that his confessions were voluntary.

█ *A. Per se rule of exclusion.* Defendant urges this court to adopt a per se rule that would hold juveniles incapable of knowingly and voluntarily waiving their rights to remain silent and to have assistance of counsel under the fifth and sixth amendments to the United States Constitution unless waiver is effected with advice of an attorney, a parent, or another adult friend. It is undisputed that, in waiving his *Miranda* rights prior to the three confessions at issue, defendant did not consult with any such individual.

On two occasions we have expressly refused to adopt the rule advocated by defendant. *See In re Thompson*, 241 N.W.2d 2, 6 (Iowa 1976); *State v. Kelley*, 253 Iowa 1314, 1324, 115 N.W.2d 184, 190 (1962). In *Thompson* we acknowledged the appeal of such a rule, and emphasized "the importance of securing for the minor under interrogation the advice and consultation of a parent, guardian, custodian, adult friend, or a lawyer." 241 N.W.2d at 5–6. And while we stated that "[f]ailure to provide such support will throw a deep shadow of judicial distrust over the resulting confession," *id.* at 6, we declined to make minority, alone, a sufficient ground for invalidating a juvenile's confession. We therefore upheld the rule we adopted in *State v. Fetters*, 202 N.W.2d 84, 88–89 (Iowa 1972), which was approved in *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618, 627 (1972), requiring the State to prove the voluntariness of a confession by a preponderance of the evidence. 241 N.W.2d at 6.

In revising our juvenile justice laws, the 1978 legislature, following the recent trend of other states, enacted a per se exclusionary rule for juvenile confessions. *See* §§ 232.11(1)–(2), .45(9), The Code 1981. Defendant does not contend that these provisions should be applied retroactively. Instead, he argues that this legislative intent should be considered in determining whether to judicially adopt a per se exclusionary rule to govern situations occurring prior to the effective date of the provisions.

We do not find defendant's argument persuasive. We assume that the 1978 legislature was familiar with the existing state of the law. *See Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980). If the legislature had intended the provisions of chapter 232 concerning juvenile confessions to receive consideration prior to their effective date, it would have made the provisions retroactive. There is no indication of such an intent, however. *See* 1978 Sess., 67th G.A., ch. 1088.

It is clear that a per se rule is not constitutionally mandated. In *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979), the United States Supreme Court held that a totality of the circumstances test provides adequate protection for a juvenile's fifth and sixth amendment rights. This ruling is in accord with our previous holdings. In obtaining confessions from juveniles prior to the effective date of sections 232.11(1)–(2), .45(9), state law enforcement officials were justified in relying on the constitutionally firm standard enunciated in *Thompson*. Accordingly, we hold that the totality of the circumstances test is the proper standard for determining the voluntariness of defendant's confessions.

*B. Totality of the circumstances.* Defendant's motion to suppress required the State to prove by a preponderance of the evidence that his confessions were made voluntarily, after an effective waiver of his *Miranda* rights. *State v. Hartman*, 281 N.W.2d 639, 643 (Iowa App.1979); *State v. Washington*, 257 N.W.2d 890, 895 (Iowa 1977), *cert. denied*, 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978); *State v. Fetters*, 202 N.W.2d at 88. These are separate issues. *State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976); *State v. Hilpipre*, 242 N.W.2d 306, 309 (Iowa 1976). Since defendant's contention that his confessions were made involuntarily is premised on the fifth, sixth, and fourteenth amendments to the United States Constitution, we review the evidence de novo, evaluating the totality of the evidence from which the allegations of unconstitutionality arise. *State v. Hartman*, 281 N.W.2d at 643; *State v. Conner*, 241 N.W.2d 447, 453 (Iowa 1976).

"[C]ourts indulge every reasonable presumption against waiver of constitutional rights." *In re Thompson*, 241 N.W.2d at 6, (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461, 1466 (1938)). In *Thompson* this court listed specific factors to be considered in determining voluntariness: the age of the accused; opportunity to consult with a parent, guardian, custodian, adult friend, or attorney; level of education; level of intelligence; length of detention; the repeated and prolonged nature of the questioning; deprivation of food or sleep; and whether the accused was advised of his or her constitutional rights. 241 N.W.2d at 6–7. *See also* § 232.45(9)(a)–(h), The Code 1981.

Defendant was born in Texas. His parents were former migrant workers. At the time of the commission of the crime at issue, he was fifteen-and-one-half years old. Defendant testified that he left home when he had completed fourth or fifth grade, went back to school when he was thirteen, eventually finished seventh grade, and attended night school up to the tenth grade. He also stated that he could read and write well. He has been employed as a meat-cutter, welder, and construction worker. In addition, two children were born of the relationship between defendant and his "wife," Manuela—a son born in 1977 and a daughter born in May 1978.

■ *1. September 16, 1977, confession.* As already noted, defendant was taken into custody under the authority of a juvenile-court writ on the ground that defendant had left the State of Texas in violation of the terms of his probation. Defendant was taken to the Plainview Police Department and, following completion of the return on the writ, was placed in jail at approximately 9:30 a.m. He remained there until approximately 11:30 a.m., while Plainview police officers attended to other business. At approximately 12:00 p.m. defendant was taken before a magistrate, who informed him of his rights concerning a recent burglary in Plainview that defendant was suspected of committing. The magistrate testified that he makes certain that juveniles understand their rights, that they do not have to furnish any statements unless they desire to do so, and that he specifically asks juveniles if they are under any fear or coercion to provide a statement. The magistrate stated that he was certain that defendant understood his rights and waived them voluntarily. Prior to appearing before the magistrate, defendant telephoned Manuela, who was at least twenty years old

at the time, and spoke with her in person for approximately five minutes outside the magistrate's office after his appearance.

Defendant was then taken back to the police station, where he was questioned briefly (fifteen to twenty minutes) regarding the Texas burglary. After again advising defendant of his rights, officers questioned defendant about the Furth homicide. Within an hour defendant confessed and a statement was tape recorded, with defendant's approval, and subsequently typed. Defendant was then taken back before the magistrate at approximately 3:30 p.m. The magistrate again informed defendant of his rights, read the confession to him, and made certain he understood the nature and contents of the statement. Defendant signed the statement and was returned to jail. The magistrate testified that he was convinced defendant waived his rights knowingly and voluntarily.

We hold that under the totality of the circumstances the State sustained its burden of proving by a preponderance of the evidence that defendant's September 16 confession was voluntary. Although it is undisputed that the magistrate made no attempt to contact an adult for defendant, he was not required to do so under Texas law. See Tex.Fam.Code Ann. tit. 3, § 51.-09(b) (Vernon Supp.1976). The Texas police officers and magistrate informed defendant of his *Miranda* rights and took care to ensure that he fully understood these rights. In addition, defendant clearly expressed his willingness to waive his rights and cooperate with the law enforcement officials.

We also believe the record reveals that defendant fully understood the rights he was waiving and the consequences of his waiver. Defendant's testimony indicates that he has sufficient mental capacity to understand events as they occur. See *State v. Holderness*, 191 N.W.2d 642, 645–46 (Iowa 1971) (defendant's testimony may be considered in determining whether defendant has sufficient mental or intellectual capacity to understand consequences of waiving constitutionally protected rights). Furthermore, although defendant was young in years at the time of the commission of the homicide, he had considerable experience in functioning as an adult. He was emancipated, self-supporting, and had a family. He also had rather extensive experience with the police and juvenile authorities and was on probation at the time of the murder. This experience may be considered when determining the voluntariness of a confession. See *Fare v. Michael C.*, 442 U.S. at 726, 99 S.Ct. at 2572, 61 L.Ed.2d at 213; *State v. Holderness*, 191 N.W.2d at 645–46.

The length of detention prior to questioning and the length of the questioning were not undue. Nor were any other improper interrogation tactics used. Although defendant contends that he was deprived of food from 9:30 a.m. until approximately 5:00 p.m., his contention is without merit. The record shows that defendant declined to accept an offer of coffee, milk, or water after being questioned about the Texas burglary, and defendant testified that he rejected an offer of food after confession to the homicide.

Although defendant did not consult with an adult after learning that he would be questioned concerning the Furth homicide, there is no indication that he requested and was denied the opportunity to do so. He waived his right to have counsel present during the interrogation. Furthermore, he was taken before an impartial magistrate prior to signing his confession. This prophylactic measure, when considered in light of the magistrate's testimony, indicates that defendant's confession was a product of his own free will and not induced by improvident interrogation tactics.

■ 2. *September 20, 1977, confession.* On September 20, 1977, Special Agent Charles Wood of the Iowa Division of Criminal Investigation and Lieutenant Raymond Fiddler of the West Des Moines Police Department went to Plainview. That evening, after advising defendant of his rights and obtaining a signed waiver thereof, the officials questioned defendant in a hospital room, where defendant was recuperating from an appendectomy performed the previous night. Defendant was on medication and in some pain.

Defendant first contends that his physical condition prevented him from voluntarily waiving his rights. The Iowa law enforcement officials acknowledged that defendant was in some pain, but they testified that he was coherent, cooperative, and fully understood what transpired. There is nothing in the record to indicate that defendant's pain or the medication he was on had such an adverse psychological impact as to make his confession involuntary. *Cf. State v. Cullison*, 227 N.W.2d 121, 129 (Iowa 1975) (confession involuntary when defendant, *inter alia*, suffered " 'probable psychologic reaction to combination of drugs and situation' " causing alarm to peace officers and resulting in defendant's hospitalization).

Special Agent Wood testified that during the September 20 interview defendant expressed a negative outlook because of the prospect of spending the remainder of his life in prison. Wood stated: "I advised him that . . . this is a step coming down the road . . . and it is nothing to be totally concerned with at this time. Not knowing what is going to happen, that is certainly going to be up to the court. . . ." Defendant contends this was tantamount to coercion and eviscerated the effect of the *Miranda* warning. We disagree. The officers did not threaten or intimidate defendant. They did not promise leniency. Wood's statement was more in the nature of an assurance that a cooperative attitude would be to defendant's benefit. *See Fare v. Michael C.*, 442 U.S. at 727, 99 S.Ct. at 2573, 61 L.Ed.2d at 213–14.

Defendant finally contends that the length of detention, from September 16 to September 20, affected the voluntariness of his confession. Defendant had signed a written confession on September 16, however; his continued detention was, therefore, warranted under the circumstances. In any event, length of detention is only one of the *Thompson* criteria. The totality of the circumstances establishes that defendant's confession was voluntary.

*3. September 21, 1977, confession.* In the afternoon on September 21, the Iowa law enforcement officials talked with Manuela. She indicated that she did not believe that defendant committed the murder, but that defendant's brother, Richard, had. To clarify this and other inconsistencies in defendant's statements the previous evening, the officials again interviewed defendant. Because the officers detected that defendant had experienced pain in signing the waiver form the previous evening, defendant was allowed to orally waive his *Miranda* rights. During this interview defendant stated, as he had originally when questioned by the Texas law enforcement officers, that Richard had in fact shot Furth.

Defendant raises essentially the same contentions he did with respect to the September 20 confession. We again find defendant's contentions to be without merit; under the totality of the circumstances defendant's September 21 confession was voluntary.

■ *II. Felony-murder instruction.* The elements of felony murder were enumerated in Instruction 13. Defendant contends: (1) that the felony-murder instruction was not legally correct under the facts of the case because, at most, the evidence established that a robbery occurred after death, and (2) that the instruction, when considered with other instructions, compelled the jury to find defendant guilty of first-degree murder. We need not reach the merits of defendant's contentions, however, because as the State points out, defendant raises this issue for the first time on appeal.[1]

Iowa R.Crim.P. 18(7)(f), rule 18(5)(f) at the time relevant herein, provides that "[t]he rules relating to the instructions of juries in civil cases shall be applicable to the trial of criminal prosecutions." In *State v. Rouse*, 290 N.W.2d 911, 915 (Iowa 1980), we held "that Iowa R.Civ.P. 196, including its requirement of timely preservation of error as to instructions, shall be fully applicable to all criminal cases." Rule 196 provides in pertinent part:

---

1. Nevertheless, these contentions are resolved in divisions III(B) and IV(C)(1).

Before jury arguments, the court shall give to each counsel a copy of its instructions in their final form, noting this fact of record and granting reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.

Although defendant's trial counsel objected to the court's failure to include defendant's requested instructions, he made no objections to Instruction 13.

Since defendant did not object to Instruction 13 at trial, error has not been preserved. *See State v. Rouse*, 290 N.W.2d at 913–15; *cf.* Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."); ABA Standards Relating to Trial by Jury 4.6(c) (1968) ("no party should be permitted to raise on appeal the giving of an instruction unless he objected thereto, stating distinctly the matter to which he objects and the grounds of his objection"). We, therefore, have nothing to review.

*III. Sufficiency of evidence.* At the close of all evidence defendant moved for a directed verdict of acquittal, having reserved the right to do so until all evidence had been presented, on the ground that the evidence was insufficient to sustain a conviction. The trial court overruled defendant's motion, and defendant assigns error.

In reviewing a motion for a directed verdict based upon insufficiency of the evidence in a criminal case, we view the evidence in a light most favorable to the State. All of the evidence must be considered, *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980), and all legitimate inferences that may be deducted therefrom will be

accepted. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). A trial court's refusal to direct a verdict for a defendant will withstand challenge if there is any substantial evidence in the record tending to support the charge. *State v. York*, 256 N.W.2d 922, 927 (Iowa 1977). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson*, 288 N.W.2d at 339.

Defendant first contends that there was no substantial evidence of premeditation or deliberation to support the charge of premeditated murder. Secondly, he claims that there was no substantial evidence of murder committed in the perpetration or attempted perpetration of robbery to support the charge of felony murder.

■ *A. Premeditation and deliberation.* Premeditation and deliberation are essential elements of "premeditated" first-degree murder, *see* § 690.2, The Code 1977; the State was therefore required to prove them beyond a reasonable doubt, *Mullaney v. Wilbur*, 421 U.S. 684, 701–04, 95 S.Ct. 1881, 1891–92, 44 L.Ed.2d 508, 521–22 (1975); *State v. Williams*, 285 N.W.2d 248, 268 (Iowa 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980). In *State v. Fryer*, 226 N.W.2d 36, 41 (Iowa 1975), this court stated:

> To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Premeditation and deliberation may not be presumed. It may not be inferred from intent. However premeditation and deliberation need not exist for any particular length of time. In finding premeditation and deliberation the trier of facts may consider the fact a defendant has selected a deadly weapon, such as the gun involved here, with an opportunity to deliberate where he thereafter uses it in a deadly manner.

(citations omitted). Thus, "the general rule is that one who arms himself with the express purpose of shooting another cannot ordinarily claim the elements of first degree

murder are lacking." *State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976).

Defendant concedes that premeditation and deliberation may be established inferentially, but, citing *State v. Streit*, 205 N.W.2d 742 (Iowa 1973), *overruled in part*, *State v. O'Connell*, 275 N.W.2d 197, 205 (Iowa 1979), contends this is so only if there is no irreconcilable evidence. Defendant argues that the testimony of his brother Richard—that the "white kid" threatened to shoot defendant if he did not shoot the victim—is irreconcilable because it established that defendant shot the victim out of coercion.

Defendant's reliance on *Streit* is unfounded. There the State failed to prove that defendant was at the scene of the crime. All of the State's evidence placed defendant somewhere else at the time the crime was committed. *Id.* at 747. The evidence was, therefore, truly irreconcilable with any rational hypothesis of defendant's guilt.

Richard's testimony that defendant shot Furth under the compulsion of being shot himself is not irreconcilable. Although defendant testified at trial that Richard, not he, fired the shot, in his September 16, 1977, confession, which was introduced into evidence, defendant stated:

> So [the "white kid"] got scared, and he went downstairs and took [Furth] to the cellar. . . . They took him to the cellar, pointed the gun at him, and shot him in the head, and then I got scared there for a while. I went to the cellar with him. I saw him shoot him. He shot him one time and then I got scared and I said to myself you might not be alive, maybe not. So then I grabbed the rifle too and gave him another bullet, in the head too.

Defendant's statement constitutes substantial evidence of premeditation and deliberation. It illustrates that defendant deliberated, selected a deadly weapon, and used it in a deadly manner. Although the confession was contradicted by the testimony of Richard and defendant, the evidence was not irreconcilable, since the confession is consistent with defendant's guilt. It is the province of the jury to reconcile conflicting evidence. *State v. Martin*, 274 N.W.2d 348, 349 (Iowa 1979). The trial court, therefore, correctly submitted the issue to the jury.[2]

*B. Perpetration of robbery.* Defendant maintains that there was no substantial evidence that the murder was committed during the perpetration or attempted perpetration of robbery, as required by section 690.2, The Code 1977. He contends that at most the evidence showed a robbery after death.

A murder is committed during the perpetration of a felony under section 690.2

> if it results as an incident to the felony and is associated with the felony as one of its hazards. It is not necessary for application of the doctrine that the murder be contemporaneous with the felony. . . . A lapse of time and distance are factors to be considered but are not determinative.

*State v. Conner*, 241 N.W.2d 447, 464 (Iowa 1976). However, the murder must be causally related to the felony. *State v. Taylor*, 287 N.W.2d 576, 577 (Iowa 1980).

Richard testified that the sequence of events resulting in Furth's death commenced when Furth refused to surrender his wallet. This testimony is substantial evidence that Furth was murdered during the perpetration of a robbery. However, defendant contends Richard was an accomplice, and that his testimony had to be corroborated. *See* Iowa R.Crim.P. 20(3):

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission

---

2. We express no view as to whether coercion or compulsion is available as a defense to murder. *But see* § 704.10, The Code 1981:

No act, other than an act by which one intentionally or recklessly causes physical injury to another, is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted only by his or her doing such act.

of the offense or the circumstances thereof.

Defendant argues that the only portion of Richard's testimony that is corroborated is that a death occurred. He submits that the test to be applied should be to withdraw the accomplice's testimony from the record and view the remaining record in its totality. Then, if there remains a prima facie case as to each element of the crime charged sufficient corroboration exists.

■ The test advocated by defendant is misconceived. The sufficiency of corroboration testimony is normally a question of fact for the jury. *State v. Harrington*, 284 N.W.2d 244, 248 (Iowa 1979).

No general rule can be stated with respect to the quantum of evidence corroborating an accomplice necessary to warrant a conviction. Each case must be governed by its own circumstances. Evidence which merely raises a suspicion the accused is the guilty party of course is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction.

*State v. Gates*, 246 Iowa 344, 351, 67 N.W.2d 579, 583 (1954). However, "the corroboration of an accomplice's testimony need not be strong, nor must it confirm every material fact testified to by the accomplice." *State v. King*, 256 N.W.2d 1, 10 (Iowa 1977). All that is required is that the accomplice's testimony be supported in some material fact that tends to connect the defendant with the crime charged and, therefore, supports the credibility of the accomplice's testimony. *State v. Kern*, 307 N.W.2d 22, 28 (Iowa 1981); *State v. Harrington*, 284 N.W.2d at 248.

■ Assuming, arguendo, that Richard was an accomplice, his testimony was sufficiently corroborated. Defendant's father and mother both testified at trial that defendant admitted that he and the "white kid," not Richard, shot Furth. This connected defendant with the murder and lent considerable credibility to Richard's testimony. There was also evidence that defendant was without money and went with Furth for the purpose of making money by engaging in homosexual activities, that the Furth residence had been ransacked, that defendant stole a ring from the bathroom prior to the murder, that defendant received money that was taken from Furth's wallet, and that defendant later possessed items taken from the Furth residence. This circumstantial evidence tended to connect defendant with a plan of robbery that was conceived prior to the killing of Furth. We therefore conclude that there was sufficient evidence to corroborate Richard's testimony.

From our review of the record, we conclude that substantial evidence existed to support the charge of felony murder.

We hold that the trial court did not err in overruling defendant's motion for a directed verdict of acquittal.

*IV. Effective assistance of counsel.* Defendant claims he was denied a fair trial because of ineffective assistance of counsel in violation of the sixth amendment to the United States Constitution and article I, section 10 of the Iowa Constitution.[3] He alleges that trial counsel's preparation and performance fell below the range of normal competency in (1) presenting the confession issue, and (2) preserving the record.

■ *A. General principles.* The right to assistance of counsel, under the sixth amendment to the Federal Constitution[4] and article I, section 10 of the Iowa Constitution, guarantees "effective" assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed.2d 158, 171–72 (1932); *State v. Gambell*, 262 N.W.2d 792, 795 (Iowa 1978). Effective assistance of counsel "means conscientious, meaningful

---

3. Upon defendant's posttrial application, through newly appointed appellate counsel, we granted a limited remand for an evidentiary hearing on this issue.

4. The sixth amendment right to assistance of counsel is binding on the states through the due process clause of the fourteenth amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799, 804–06 (1963).

representation." *Scalf v. Bennett*, 260 Iowa 393, 399, 147 N.W.2d 860, 864 (1967). The test for determining whether a defendant has been denied effective assistance of counsel is whether, considering all of the circumstances, the attorney's performance was within the normal range of competency. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

A presumption exists that counsel is competent. *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980). Defendant has the burden of proof to establish by a preponderance of the evidence that counsel rendered ineffective assistance. *Id.* "Improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective counsel." *Parsons v. Brewer*, 202 N.W.2d 49, 54 (Iowa 1972). To warrant a finding of ineffective assistance of counsel, the "circumstances must include 'an affirmative factual basis demonstrating counsel's inadequacy of representation.'" *State v. Massey*, 207 N.W.2d 777, 780 (Iowa 1973) (quoting *In re Parker*, 423 F.2d 1021, 1025 (8th Cir.), *cert. denied*, 398 U.S. 966, 90 S.Ct. 2182, 26 L.Ed.2d 551 (1970)).

Since defendant has alleged a violation of constitutional rights, we must make an independent evaluation of the totality of the circumstances. This is tantamount to a de novo review. *Sims v. State*, 295 N.W.2d at 422.

*B. Ineffective presentation of the confession issue.*

*1. Language barrier.* Defendant contends that since he is of Mexican descent, and because of his limited education, trial counsel should have argued the existence of a language barrier as a factor affecting the voluntariness of the confessions. However, defendant was born in the United States, and the transcript of defendant's testimony reveals that defendant has a good command of the English language. Furthermore, at the posttrial hearing held on the issue of ineffective assistance, trial counsel testified that he had examined the possibility of a language barrier but found that defendant read very capably and had no trouble in conversing. Moreover, there is nothing in the record that indicates the existence of a language barrier.

█ *2. Mental capacity.* Defendant argues that since trial counsel represented him for more than three months prior to trial, including defendant's transfer from juvenile court, counsel should have raised defendant's mental capacity as a factor bearing on the voluntariness of the confessions. Defendant contends that counsel should have obtained psychiatric or psychological tests for this purpose.

We find no merit in this contention. Although trial counsel did not seek to have defendant evaluated for the purpose of determining his mental capacity to understand a waiver of constitutional rights, counsel did have information on a psychological evaluation performed at Broadlawns Hospital. We therefore believe that this matter was thoroughly considered. *See State v. Lemburg*, 257 N.W.2d 39, 46 (Iowa 1977). Also, as we noted in division I, defendant's testimony indicates that he had sufficient mental capacity to understand the consequences of waiving constitutionally protected rights. *See State v. Holderness*, 191 N.W.2d at 645–46.

█ *3. Medication.* It is undisputed that when the Iowa law enforcement officials interviewed defendant on September 20, 1977, defendant was on some medication due to the emergency appendectomy performed approximately twenty-four hours earlier. Defendant maintains that trial counsel should have inquired into the type of medication and the dosage that defendant received.

The Iowa law enforcement officials testified that defendant was coherent and fully understood everything that occurred during the September 20 and 21 interviews. In addition, trial counsel stated that he was sure he had discussed the matter thoroughly with defendant, and that defendant verified the events alleged to have taken place during the questioning.

As we noted in division I, there is nothing in the record to indicate that the medication defendant was on affected the voluntari-

ness of his confessions. Counsel cannot be considered incompetent for failing to pursue a matter when, after meaningful examination, a substantial basis exists for concluding that defendant would not prevail on the issue. *Cf. Kellogg v. State*, 288 N.W.2d 561, 565 (Iowa 1980) (trial counsel not incompetent for failing to file suppression motion when, after investigation, counsel believed motion would not be granted); *State v. Cooper*, 161 N.W.2d 728, 730 (Iowa 1968) (strategic decision not to file suppression motion not necessarily indication of ineffective assistance of counsel).

■ *4. Suppression hearing conducted in part by telephone.* During the March 17, 1977, suppression hearing, two witnesses—a Texas magistrate and peace officer—testified via telephone. The transcript of the hearing reveals that the purpose of having the witnesses testify in this manner was to eliminate the traveling and accommodation expenses that personal appearances would have entailed. The State and defense counsel agreed to the manner of testimony and, after the trial court explained the procedure to defendant, defendant stated he had no objections. Defendant now asserts that trial counsel's agreement to the telephone testimony violated defendant's right of confrontation.

The principal interest secured by the confrontation clause of the sixth amendment to the United States Constitution is the right of effective cross-examination. *State v. Davis*, 269 N.W.2d 434, 438 (Iowa 1978); *State v. Carney*, 236 N.W.2d 44, 46 (Iowa 1975). In determining whether the right of confrontation has been violated the " 'relevant factual inquiry is whether, under the circumstances,' the [fact finder] has been deprived of a satisfactory basis for evaluating the truthfulness of the prosecution witness's testimony." *State v. Ege*, 274 N.W.2d 350, 356 (Iowa 1979) (quoting *United States v. Rogers*, 549 F.2d 490, 499 (8th Cir. 1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977)).

Although the opportunity to observe a witness' demeanor can be an important factor in ascertaining the witness' credibility,

under the circumstances, we are convinced that the trial court had a satisfactory basis for evaluating the testimony of the two Texas witnesses. The witnesses were properly sworn before they testified and were thoroughly cross-examined by defense counsel.

*5. Failure to include Texas law.* Defendant contends that, although his trial counsel knew it would be an issue, counsel did not raise Texas law as a basis for excluding the confessions. The record shows that trial counsel did attempt to raise this issue at trial, but the trial court determined the issue was not timely presented.

As the State notes, however, defendant has not demonstrated how a timely presentation of Texas law would have provided more effective assistance of counsel. Nor has he shown prejudice. "[A]llegations of inadequate representation by counsel, such as to be constitutionally deficient or to deprive an accused of a fair trial, must be supported by more than speculative, generalized argument." *State v. Kendall*, 167 N.W.2d 909, 911 (Iowa 1969).

■ *6. Failure to object to Instruction 20.* Instruction 20 instructed the jury on confessions. Although the instruction listed specific factors to be considered in determining the weight and credibility to be accorded defendant's confessions, there was no reference to age. Defendant argues that trial counsel's failure to object to Instruction 20 on this basis constitutes incompetence. We do not agree.

Once the trial court has determined that a confession is admissible, the weight to be accorded the confession and the credibility of witnesses testifying in regard thereto are matters for the jury. *State v. Holland*, 258 Iowa 206, 215, 138 N.W.2d 86, 91 (1965). The jury may consider all of the circumstances surrounding the confession, including the mental capacity of the accused. *See id.* at 213, 215, 138 N.W.2d at 90, 91.

Instruction 20 is substantially identical to II Iowa Uniform Jury Instructions Ann. 212 (1978), which does not include age as a factor to be considered in determining the

weight and credibility to be given to a confession. Like Uniform Instruction 212, however, Instruction 20 provided that the jury was to consider "all of the facts and circumstances surrounding" defendant's confessions. The instruction also provided: "You should consider the mental capacity and intelligence of defendant, his mental and emotional state at the time, whether or not [the confessions] were knowingly and intelligently made and understood by the defendant, and any other matter disclosed by the evidence bearing upon their truthfulness and from all of the facts and circumstances proven determine and give to them such weight as you believe them fairly entitled."

Although the record does not include a transcript of the closing arguments, at the ineffective assistance of counsel hearing trial counsel testified that he argued the age factor to the jury. In view of trial counsel's uncontradicted testimony and the inclusive language of Instruction 20, we are satisfied that the instruction sufficiently apprised the jury that defendant's age was a factor to be considered in determining the weight to be accorded his confessions.

*C. Ineffective preservation of the record.*

■ *1. Failure to object to Instruction 8.* Instruction 8 provided in pertinent part: "There are no lesser included offenses in the charge of murder in the first degree committed during the perpetration of the crime of robbery." This was clearly an erroneous statement of law. In *State v. Millspaugh*, 257 N.W.2d '513, 516 (Iowa 1977), this court held that second-degree murder and manslaughter are lesser included offenses of felony murder. Nevertheless, trial counsel's failure to object to the erroneous statement of law does not constitute ineffective assistance of counsel because defendant was not prejudiced thereby. *See Hinkle v. State,* 290 N.W.2d at 34–35.

The State prosecuted defendant under alternative theories of first-degree murder— premeditated murder and felony murder. *See* § 690.2, The Code 1977. Instruction 13

instructed the jury on these offenses. Instruction 15 instructed the jury on second-degree murder, and Instruction 16 instructed the jury on manslaughter.

If, in considering the charge of premeditated murder, the jury concluded that the elements of willfulness, deliberation, or premeditation did not exist, the jury would have next considered the charge of felony murder. If the jury had found that Furth was not murdered in the perpetration or attempted perpetration of a felony, the jury could not have considered the lesser included offenses of second-degree murder and manslaughter in conjunction with the felony-murder charge because it was instructed that there were no lesser included offenses of felony murder. Yet, the jury would have considered the lesser included offenses in conjunction with the charge of premeditated murder. The same would have been true if the greater offenses had been considered in reverse order. Defendant, therefore, was not prejudiced by the erroneous statement of law in Instruction 8 and cannot complain that the jury was not given an opportunity to find him guilty of the lesser included offenses of second-degree murder and manslaughter.

■ *2. Failure to voir dire jurors concerning their knowledge of the newspaper article.* During trial defendant moved for a mistrial because of an article that appeared in the Des Moines Tribune on June 13, 1978, which stated: "Richard Aldape was found innocent of Furth's slaying at a Polk County Juvenile Court hearing last November." Defense counsel pointed out that the case had been dismissed because of insufficient evidence and contended that the statement was prejudicial to defendant. After stating that the thing to do was to poll the jury, the trial court stated that once a jury's attention is called to a newspaper article the jury members are likely to go home and read it. The court subsequently decided not to poll the jury unless there were objections. Defense counsel did not object, and the motion was overruled. Defendant maintains that trial counsel's failure to object denied him the opportunity to make a

record of what effect, if any, the article had on the jury.

While it may have been better practice for trial counsel to object to the trial court's failure to poll the jury, defendant has not shown that he was prejudiced by trial counsel's failure to do so. *See Hinkle v. State*, 290 N.W.2d at 34–35. When jury members have been clearly admonished not to expose themselves to media publicity concerning the trial in which they are serving as jurors, as the jurors were in the present case, a presumption arises that they will not violate this admonition. *State v. Sallis*, 262 N.W.2d 240, 246 (Iowa 1978). Not only is the burden on the defendant to demonstrate jury exposure to trial publicity, but unless specific examples are presented of jurors being affected, it weighs heavily against the defendant. *Id.* at 247. Although defendant contends that trial counsel was remiss in failing to inquire into these very issues, an allegation of inadequacy of counsel grounded on failure to inquire into trial publicity must be supported by more than mere speculation or conjecture that the jury may have been affected thereby. We will not presume prejudice from the mere publication of a newspaper article. *State v. Frank*, 298 N.W.2d 324, 327 (Iowa 1980).

There is nothing in the record indicating that the jury violated the trial court's admonition against exposure to trial publicity, much less that the jury was affected thereby. Defendant had an opportunity to show prejudice at the posttrial hearing on the question of ineffective assistance of counsel. He could have presented evidence concerning juror exposure to trial publicity. Defendant did not avail himself of this opportunity, however. Since defendant has not established prejudice, he has not shown that counsel's failure to object to the trial court's decision not to poll the jurors constituted ineffective assistance of counsel.

Having thoroughly reviewed the record, we find no merit to defendant's claim that he was denied a fair trial by reason of ineffective assistance of counsel. Trial counsel's performance was within the normal range of competency.

*V. Conclusion.* We have considered all of defendant's contentions and find no reversible error.

AFFIRMED.