STATE of Iowa, Appellee,

v.

Swan Charles MAGNUSON, Jr., Appellant.

No. 65246.

Supreme Court of Iowa.

July 15, 1981.

Gerald E. Moran, Omaha, Neb., and Elizabeth Otte, Council Bluffs, for appellant.

Thomas J. Miller, Atty. Gen., John Messina, Asst. Atty. Gen., Joseph Hrvol and E. A. Westfall, Asst. County Attys., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

McCORMICK, Justice.

Defendant Swan Charles Magnuson, Jr., appeals his conviction and sentence for first-degree murder in violation of section 707.2, The Code. He raises speedy trial and evidentiary questions. We find no merit in his contentions and therefore affirm the trial court.

The questions presented are whether the trial court erred in overruling defendant's motion to dismiss on speedy trial grounds, in overruling his pretrial motion to suppress evidence from blood and urine tests, in overruling his motions to strike the testimony of three witnesses, and in overruling his motions for acquittal based on the insufficiency of the evidence.

Defendant admittedly killed his mother Clara Magnuson during the morning of August 19, 1978, by striking her on the head with a cement lawn ornament. In support of its charge of first-degree murder, the State sought to establish that the killing was a premeditated and deliberate act which followed a dispute during which defendant argued with his mother and beat her with his fists. Defendant urged defenses of insanity and diminished responsibility. He sought to show he had a mental illness which had been activated by the ingestion of alcohol and drugs. He also asserted the killing occurred accidentally while his mother was attempting to prevent him from striking himself on the head with the cement ornament.

The case was tried to the court, defendant having waived a jury. Following trial, the court filed detailed findings of fact, conclusions of law, and a verdict finding defendant guilty of first-degree murder. He was subsequently sentenced, and this appeal followed.

I. *The motion to dismiss.* Iowa R.Crim.P. 27(2)(c) provides:

All criminal cases must be brought to trial within one year after the defendant's initial arraignment unless an extension is granted by the court, upon a showing of good cause.

Defendant filed a pretrial motion to dismiss alleging a violation of this rule. The trial court overruled it based upon findings of good cause and waiver. Defendant contends the court erred because no extension was granted and neither good cause nor waiver was shown.

Defendant was arraigned on August 24, 1978. On October 4, 1978, he executed a written waiver of his right to speedy trial within the 90-day period provided in rule 27(2)(b). Trial was set for November 7, 1978, but was continued at defendant's request. It was next set for March 6, 1979, but was again continued on defendant's motion. Trial was then set for July 9, 1979. Defendant filed a motion for bench trial which was overruled by the court. He then applied to this court for a stay of trial pending this court's decision of the issue of a defendant's right to insist on a bench trial. *See State v. Henderson,* 287 N.W.2d 583 (Iowa 1980). This court granted a stay. The stay was dissolved on motion of the State after the decision in *Henderson.* Trial commenced on March 25, 1980, two weeks after the stay was dissolved.

■ Even though waiver is not mentioned in the rule, we find that a defendant may waive the requirement of trial within one year of arraignment. Because the right to speedy trial is personal, it is one which a defendant may forego at his election. *See McCandless v. District Court,* 245 Iowa 599, 604–08, 61 N.W.2d 674, 677–79 (1953) (an accused could waive the provision of section 795.3, The Code 1950, barring a continuance beyond three subsequent terms of court).

■ In waiving his right to trial within the 90–day period of rule 27(2)(b), in obtaining continuances of trial on two occasions and a stay of trial from this court on a third occasion, defendant prevented his case from being brought to trial within one year of his arraignment. We find that the trial court acted well within its discretion in holding he waived his right to be brought to trial within that period. Because defendant waived his right under the rule, he cannot complain of the State's failure to obtain an

extension of the period for trial. Nor do we find it necessary to address the good cause issue.

Moreover, defendant's separate attack on the delay based on U.S.Const. Amends. VI and XIV also fails. From our de novo review of the record, we find the conduct through which he waived his right to speedy trial under rule 27(2)(c) also demonstrates waiver of his constitutional right. *See State v. Petersen,* 288 N.W.2d 332, 334–35 (Iowa 1980).

■ II. *The motion to suppress.* Defendant filed a pretrial motion to suppress evidence of blood and urine test results. He contended the State did not have probable cause to obtain the specimens and took the urine specimen without a warrant. After an evidentiary hearing, the trial court overruled the motion. Defendant alleges this ruling was erroneous.

Contrary to defendant's contention, the record of the suppression hearing shows the State had warrants for both the blood and urine specimens. Furthermore, we agree with the trial court that the warrants issued upon probable cause. A Council Bluffs detective gave an affidavit in support of the warrants. He said he interviewed Dorothy Hogan, an eyewitness to the homicide who heard defendant argue with his mother and then strike her with the cement ornament. The officer said he talked to defendant about it and defendant told him he had taken mescaline prior to the attack. The officer asked for the specimens in order to have them analyzed for the presence of mescaline. The trial court did not err in holding that the warrants issued upon probable cause.

■ III. *Striking three witnesses' testimony.* By motion in limine and motions to strike at trial, defendant sought unsuccessfully to exclude the testimony of three State witnesses. He asserts the trial court erred in refusing to exclude this evidence.

The three witnesses were on the premises of a gas station at approximately 7:30 a.m. on the morning of the homicide. Considering their testimony together, the court could find that defendant and his mother were in an automobile which stopped on the highway 75 to 100 feet from the witnesses. As defendant's mother sat in the driver's seat, defendant beat her on the head and face with his fists. He then got out of the car and started to walk toward the rear of the vehicle. His mother yelled at him to get back in the car. After cursing her, he did so and the vehicle left the area. The witnesses saw blood on the mother's right temple. The killing occurred a short while after the events observed by these witnesses.

Defendant asserts this evidence was irrelevant. He also asserts it should have been excluded because two of the witnesses could not identify him and because any probative value was outweighed by the danger of unfair prejudice.

This evidence was plainly relevant on the mental elements of first-degree murder. *State v. Hilleshiem,* 305 N.W.2d 710, 714 (Iowa 1981); *State v. Harrington,* 284 N.W.2d 244, 247–48 (Iowa 1979). Moreover, the event on the street was sufficiently close in time and place to the killing that it could be considered an inseparable part of the deed. *See State v. Lyons,* 210 N.W.2d 543, 546–47 (Iowa 1973); *State v. Galvan,* 181 N.W.2d 147, 150 (Iowa 1970).

■ Although two of the witnesses were unable to identify defendant, their description of the incident and participants matched that of the third witness who did identify defendant. Taken together, this testimony was sufficient for the court to find that defendant and his mother were the persons involved in the incident.

Assuming he preserved error on his present claim of undue prejudice from this evidence, we find no abuse of discretion in the court's rulings. *See State v. Harmon,* 238 N.W.2d 139, 144–45 (Iowa 1976).

■ IV. *Sufficiency of the evidence.* Defendant contends the trial court erred in overruling his motions for acquittal based on the insufficiency of the evidence. He argues that the State failed as a matter of law to adduce sufficient evidence on the

mental elements of first-degree murder and that the State failed as a matter of law to prove his sanity.

Principles governing our review are well established. They were recently restated in *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). In reviewing the sufficiency of the evidence for conviction, we no longer make any distinction between direct and circumstantial evidence.

The record contains substantial evidence to support the following relevant findings of the trial court:

During the evening hours of August 18, 1978, and the early morning hours of August 19, 1978, defendant consumed liquor and beer and ingested a drug which he thought was mescaline. When he got home about 5 a.m., he talked with his parents, but became ill and vomited when he ate some food. His mother persuaded him to see the family doctor in Council Bluffs, Iowa. En route, defendant and his mother argued in the car, and defendant punched her several times causing blood to flow from her forehead. When they arrived at the doctor's home, defendant and his mother argued and pushed each other back and forth. She ran to the front porch where defendant grabbed her and pushed her against the front door and into the mailbox. Then, as she fled from the front porch, defendant struck her at least twice with a large concrete lawn ornament. The police arrived as defendant fled into Washington Avenue and then ran back through the doctor's yard where he was arrested and where he admitted to the police that he had just killed his mother. At this time defendant's appearance and manner showed no evidence of alcohol or drug intoxication, and tests of his blood and urine taken about three hours later were negative as to alcohol and drug content. An autopsy established that defendant's mother died as a result of the injuries sustained to her head. Defendant was examined by two psychiatrists who agreed generally as to findings but differed as to interpretations or conclusions.

.   .   .   .   .

Defendant has raised the defense of insanity and/or dimished responsibility, and claims that he suffered from a psychosis which was aggravated by his use of alcohol and drugs. The Court finds the following to be significant on this question:

At about 5 a.m. on the day of the killing, defendant carried on a normal conversation with his parents. His father was not afraid to leave him with his mother while father went to work. Defendant made the choice of seeing the family physician rather than going to the V.A. Hospital for treatment. En route after fighting with his mother and briefly leaving the car, he resumed the trip at her urging. On the doctor's premises when she insisted on seeing the doctor, he pursued her and slammed her into the door and the mailbox. He threw the lawn ornament into the back of her head and again when she was on the ground. He then fled the scene, and upon seeing the officers attempted to flee from them. When an officer yelled at him to halt, defendant immediately did so and threw his arms into the air. He admitted that he had just killed his mother and pointed out the area where she was lying. The arresting officers stated that defendant appeared normal, his eyes were not dilated or glassy or bloodshot, and he responded directly to questions. He had no difficulty talking at the police department, and asked for his attorney. Tests of blood and urine showed no alcohol or drug content. Psychiatrist R. T. Lara observed defendant over a three-month period at Oakdale, and gave his opinion that the defendant on the day of the killing knew the difference between right and wrong and had sufficient mental capacity to know what he was doing, specifically, the act of killing his mother. Psychiatrist William Bruns interviewed defendant for one hour and formed his opinion which he confirmed with a second one-hour interview with Defendant. Defendant knew he had problems with

drugs but persisted in their use anyhow. Defendant on the date of the killing perceived his mother as his mother.

From these findings, the trial court concluded:

The Court is satisfied that the State has proved beyond a reasonable doubt that at the time of the killing defendant had sufficient mental capacity to know and understand the nature and quality of his acts and at that time could distinguish right from wrong as to his acts. Further, the Court is satisfied that the State has proved beyond a reasonable doubt that the defendant struck his mother, Clara Magnuson, with malice aforethought, willfully, deliberately, premeditatedly and with the specific intent to kill her.

The legal principles applied by the trial court are delineated in *State v. Hall*, 214 N.W.2d 205, 207–10 (Iowa 1974). Even though psychiatric testimony established that defendant suffered from a preexisting psychosis which would be exacerbated by ingestion of alcohol and other drugs, the State's psychiatrist testified that at the time of the killing defendant had the capacity to entertain the mental elements of first-degree murder. Although there was evidence from which the court could have reached a different result, the evidence was sufficient for submission of the case to the court as finder of the facts. The trial court did not err in overruling defendant's motions for acquittal.

We have considered all of defendant's contentions and arguments and, whether specifically addressed or not, find they are without merit.

AFFIRMED.