**STATE of Iowa, Appellee,**

v.

**Reed Wayne HAMILTON, Appellant.**

**No. 64159.**

Supreme Court of Iowa.

Aug. 26, 1981.

John Wellman and Martha Shepard, Polk County-Des Moines Offender Advocate Office, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Steffe, Asst. Atty. Gen., Dan Johnston, Polk County Atty., and Robert Burnett, Asst. Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

Late in the afternoon on January 25, 1978, Nick Pappas, Jr., a dealer in illicit drugs, and Cathy Larson were found dead in separate rooms of Pappas's residence in Des Moines. Both deaths were caused by wounds from a .38 caliber gun. On February 2, 1978, defendant was charged by separate trial informations with murder in the first degree in violation of sections 707.1–.2, The Code, for each death. The informations were consolidated for trial.

The matter came to trial in Union District Court on a change of venue. Defendant was found guilty by jury verdict of first-degree murder for the death of Cathy Larson and voluntary manslaughter for the death of Nick Pappas, Jr. in violation of sections 707.1–.2 and 707.4, The Code, respectively. Defendant appeals both convictions. He contends: (1) he was denied the right to a speedy trial; (2) a "deposition" containing premarital testimony of his wife was improperly admitted into evidence; (3) the evidence was insufficient to support the charges of first-degree murder; and (4) he should have been granted a mistrial because of surprise testimony regarding an alleged confession and because of prosecutorial and jury misconduct. We find merit in defendant's second contention and reverse and remand for a new trial.

I. *Speedy trial.* Defendant contends he was denied the right to a speedy trial. The facts underlying this contention are undisputed.

Defendant was charged, arraigned, and pled not guilty in February 1978. After a motion to suppress evidence was filed on his behalf, defendant executed and filed a waiver of his right to a speedy trial, which stated in part: "I understand that I may eventually be brought to trial on the above charges and when and if said trial occurs, I will be forever barred from raising as a defense that I was not afforded a speedy trial." Both defendant and the State sought and obtained appellate review of the trial court's ruling on the motion to suppress. In April 1979 the court of appeals filed its decision, and the State applied to this court for further review. We denied further review on June 8, 1979, and issued a *procedendo* on June 18, 1979.

Trial was set for August 13, 1979. On July 30 the trial was rescheduled for September 17, 1979, due to ill health of the district judge scheduled to preside. On August 9 defendant filed a written demand for a speedy trial, alleging that the trial date exceeded the ninety-day time limit imposed by Iowa R.Crim.P. 27. The trial court found that defendant had waived his right to a speedy trial and treated the demand as a withdrawal or revocation of the waiver. The court then ruled that the September 17 trial date was well within ninety days from the date of withdrawal.

On September 12 defendant filed a motion to dismiss on the basis that the time requirement of rule 27 had been exceeded and his right to a speedy trial had therefore been violated. At a hearing on the motion, defense counsel argued that the ninety-day period of rule 27(2)(b) commenced the date this court denied further review of the ruling on the motion to suppress. The trial court overruled the motion, again stating that the time period commenced on the date the waiver was withdrawn and that the September 17 trial date was within ninety days of the withdrawal.

On appeal defendant argues: (1) the ninety-day period of rule 27(2)(b) commenced on June 8, 1979, when this court denied further review, and (2) he was not brought to trial within one year after his arraignment, as required by rule 27(2)(c).

Rule 27(2)(b)–(c) provides:

2. *Speedy trial.* It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties. Applications for dismissals under this subsection may be made by the prosecuting attorney or the defendant or by the court on its own motion.

. . . .

b. If a defendant indicted for a public offense has not waived his right to a speedy trial he must be brought to trial within ninety days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

c. All criminal cases must be brought to trial within one year after the defendant's initial arraignment unless an extension is granted by the court, upon a showing of good cause.

■ A. *Commencement of ninety-day time period.* If trial is not commenced within the ninety-day period prescribed by rule 27(2)(b), the trial must be dismissed unless: "(1) the defendant has waived his right to a speedy trial, (2) the delay is attributable to the defendant, or (3) there is 'good cause' for the delay." *State v. Petersen,* 288 N.W.2d 332, 335 (Iowa 1980). Defendant concedes that he waived his right to be tried within ninety days from the date formal charges were filed against him. However, he asserts that the revocation of his waiver caused the ninety-day period of rule 27(2)(b) to commence on the last day of any delay attributable to him, which he claims was the day we denied further review of the ruling on the motion to suppress. We disagree.

■ The obvious purpose of the time period contained in rule 27(2)(b) is to implement the constitutional provisions that require an expeditious trial. The rule was not intended to provide a defendant with a weapon to trap state officials and terminate prosecutions. Nor was it intended to be a device to give a defendant absolute immunity from prosecution. *State v. Cennon,* 201 N.W.2d 715, 718 (Iowa 1972); *see State v. Zaehringer,* 306 N.W.2d 792 (Iowa 1981).

■ When waiver of the right to a speedy trial is withdrawn, the State must have an adequate opportunity to prepare for trial. Under defendant's argument, however, a defendant could withdraw waiver eighty-nine days after the conclusion of an interlocutory appeal, and the State would be required to go to trial the following day. Such a result would not afford the State a fair trial.

■■ When a case on appeal is remanded, absent waiver of the right to a speedy trial, the period during which the defendant must be tried commences on the date *procedendo* issues. *State v. Lybarger,* 263 N.W.2d 545, 547 (Iowa 1978). Similarly, when a mistrial occurs, the time period for retrial commences on the date of mistrial. *State v. Wright,* 234 N.W.2d 99, 103–04 (Iowa 1975) (adopting as rule of court same time limitations for retrial that are imposed by statute for initial trial). In both instances the time period commences on a date certain, known to both the defendant and the State on the date of commencement. Both parties are thus afforded adequate time to prepare for trial; yet, the defendant's right to a reasonably expeditious determination of innocence or guilt is protected. We believe that, in order to ensure both the State and the defendant a fair trial, the same rule is required here.

■ Although, by its express terms, rule 27(2)(b) is applicable only to an original trial, we have applied the speedy trial time limitations to retrials in other contexts. *See Lybarger,* 263 N.W.2d at 547; *Wright,* 234 N.W.2d at 103. We therefore hold as a rule of this court that when a waiver of the right to a speedy trial is withdrawn, the defendant must be tried within ninety days from the date of withdrawal unless good cause to the contrary be shown. Since de-

fendant was tried within ninety days from the date he withdrew his waiver, the trial court correctly overruled his motion to dismiss.

■■■ In addition to his statutory claim under rule 27(2)(b), defendant contends he was denied the right to a speedy trial under the sixth and fourteenth amendments to the United States Constitution and article I, section 10 of the Iowa Constitution. This issue was not raised before the trial court, however. As we stated in *State v. Moorhead*, 308 N.W.2d 60, 64 (Iowa 1981) (citations omitted), "Matters not raised before the trial court cannot be raised for the first time on appeal, including constitutional issues."

■ B. *Trial more than one year after arraignment.* In his motion to dismiss defendant generally referred to the "time requirements" of rule 27. The one-year time period of subsection (2)(c) was not addressed in the motion or at the hearing on the motion. In fact, defense counsel stated on the record that he wanted the case set for trial in August, more than one year after defendant's arraignment. The issue concerning the one-year time period of subsection (2)(c) was not raised until this appeal. As we just noted, matters not raised before the trial court cannot be raised for the first time on appeal.

Furthermore, defendant waived his right to be tried within the one-year period prescribed by rule 27(2)(c). In *State v. Magnuson*, 308 N.W.2d 83 (Iowa 1981), defendant waived the ninety-day period of rule 27(2)(b) and obtained two continuances and a stay of trial. We held that defendant thereby prevented his case from being brought to trial within one year of arraignment and this constituted waiver of his rights under rule 27(2)(c). We stated: "Even though waiver is not mentioned in the rule, we find that a defendant may waive the requirements of trial within one year of arraignment. Because the right to speedy trial is personal, it is one which a defendant may forego at his election." *Id.*

In this case defendant waived the ninety-day period of rule 27(2)(b) and obtained an interlocutory appeal, which was not completed within one year after arraignment. As we stated in *Magnuson*, "Because defendant waived his right under . . . rule [27(2)(c)], he cannot complain of the State's failure to obtain an extension of the period for trial." *Id.*

II. *Admissibility of wife's premarital testimony.* Defendant contends the trial court erred in admitting into evidence portions of a purported deposition of Diane Nystrom Hamilton, taken prior to her marriage to defendant. Error was preserved by defendant's timely objection challenging: (1) the competency of the testimony on the basis of the marital privilege provided by section 622.7, The Code, and (2) the validity of the procedure utilized in obtaining the deposition. Since we find merit in defendant's contention that the procedure utilized was invalid, we need not consider the objection grounded on marital privilege.

Diane Nystrom resided with defendant from September 1977 until his arrest on January 26, 1978. They had planned to be married in April 1978. On January 26 Diane gave police oral and written statements concerning defendant's activities the previous day—the day of the crimes. She was listed as a State's witness on the consolidated trial information filed by the county attorney.

In late August the prosecution, without obtaining approval of court, issued subpoenas to Diane and two other persons. The subpoenas, which were obtained pursuant to Iowa R.Crim.P. 5(6) for the purpose of investigating testimony prior to trial, ordered the witnesses to appear before the prosecutor on September 11.

On September 10 the prosecutor learned of the impending marriage of Diane and defendant. Concerned that Diane would not testify at trial because of the marital privilege, he served defense counsel with a "notice of deposition." The notice stated that "the deposition of Diane Nystrum [*sic*] will be taken . . . *as provided for in Rule of Criminal Procedure 5.6* [*sic*]." (Emphasis

added). After service of the notice, the parties met informally in the presence of the court. Defense counsel stated on the record: (1) the subpoena was improperly issued; (2) the prosecution had not complied with the rules of civil and criminal procedure for the taking of a deposition; and (3) since any sworn testimony of Diane Nystrom would not constitute a deposition, the defense would not be present at the proceeding.

The sworn testimony of Diane Nystrom was taken on September 11. She married defendant on September 14. Thereafter, the State filed an application to put into evidence at trial, as a deposition, part of the testimony obtained on September 11. The application stated that as a result of the marriage

Diane Nystrom is incompetent to take the stand as a State's witness . . . .

That the marriage . . . , solely for the purpose of excluding otherwise admissible evidence, does constitute an exceptional circumstance, and the interests of justice do require that the jury be given an opportunity to consider all of the admissible evidence, including the non-privileged statements of the witness, Diane Nystrom, prior to the marriage.

The State claimed the testimony was admissible as a deposition under Iowa R.Civ.P. 144(c)-(d).[1]

The trial court, over defendant's objections, admitted the testimony into evidence as a deposition. The court allowed defendant the opportunity to cross-examine Diane Nystrom Hamilton, which he declined to do.

Iowa R.Crim.P. 5(6) provides:

*Investigation by prosecuting attorney.* The clerk of the district court, on written application of the prosecuting attorney and the approval of the court, shall issue subpoenas including subpoenas duces tecum for such witnesses as the prosecuting attorney may require *in investigating an offense*, and in such subpoenas shall direct the appearance of said witnesses before the prosecuting attorney at a specified time and place. Such application and judicial order of approval shall be maintained by the clerk in a confidential file until a charge is filed, in which event disclosure shall be made, unless the court in an in camera hearing orders that it be kept confidential. The prosecuting attorney shall have the authority to administer oaths to said witnesses and shall have the services of the clerk of the grand jury in those counties in which such clerk is regularly employed. The rights and responsibilities of such witnesses and any penalties for violations thereof shall otherwise be the same as a witness subpoenaed to the grand jury.

(Emphasis added).

We conclude that the trial court erroneously admitted into evidence the testimony at issue for two reasons. First, the State did not follow the procedures prescribed by rule 5(6), and, second, the testimony did not constitute a deposition.

■■■ At common law there was no right to take depositions, except in equity cases or by agreement of the parties. The authority to take depositions in criminal cases, as a matter of right, is granted by statute or rule. Such statutes or rules are in derogation of common law, and, although they are to be construed liberally, substantial compliance is required. 23 Am.Jur.2d

1. Rule 144(c)-(d) provides:

Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial or at an interlocutory hearing or upon the hearing of a motion in the same action against any party who appeared when it was taken, or stipulated therefor, or had notice thereof, either:

. . . .

(c) For any purpose, if the court finds that the offeror was unable to procure deponent's presence at the trial by subpoena; or that deponent is out of the state or more than one hundred miles distant from the trial, and such absence was not procured by the offeror; or that deponent is dead, or unable to testify because of age, illness, infirmity or imprisonment.

(d) On application and notice, the court may also permit a deposition to be used for any purpose, under exceptional circumstances making it desirable in the interests of justice; having due regard for the importance of witnesses testifying in open court.

*Depositions and Discovery* § 11 (1965); 26A C.J.S. *Depositions* §§ 4, 16 (1956); *cf. Bohen v. North American Life Insurance Co.*, 188 Iowa 1349, 1357, 177 N.W. 706, 709–10 (1920) (taking of depositions in actions at law limited to method provided by statute). Failure to substantially comply with prescribed procedures may result in exclusion or suppression of the testimony. 23 Am. Jur.2d *Depositions and Discovery* § 87.

■ In the present case the State did not file a written application for or obtain judicial approval of the issuance of the subpoena to Diane Nystrom. Under the aforementioned principles, this constituted failure to substantially comply with the express requirements of rule 5(6) and rendered the testimony inadmissible.

■ More importantly, however, the testimony did not constitute a deposition. The term "deposition" is not defined in the rules of civil or criminal procedure or in the Code. Generally, however, "deposition" refers to a written record of testimony of a witness questioned under oath before a judicial officer, with an opportunity afforded for cross-examination. 26A C.J.S. *Depositions* § 1.

■ The language of rule 5(6) reveals that its obvious purpose is to provide the prosecution with an investigative tool to supplement or to be used in lieu of a grand jury proceeding. There is no indication that it may be used as a means of perpetuating testimony for trial, however. There is nothing in the rule purporting to ensure the accuracy and reliability of the testimony obtained, other than the use of the grand jury clerk, whose only qualification under Iowa R.Crim.P. 3(4)(b) is competency. *Cf.* Iowa R.Crim.P. 12(1) (depositions shall be taken "in the same manner and with like effect and with the same limitations as in civil actions except as otherwise provided by statute and these rules"); Iowa R.Civ.P. 148(a) ("testimony shall be taken stenographically or recorded by other means ordered in accordance with R.C.P. 140 'b' (4)"); *id.* 149 (if not taken by official court reporter or certified shorthand reporter,

deposition must be read and signed by deponent with opportunity to make corrections, unless examination and reading waived by deponent and parties). Furthermore, we do not believe defendant was afforded a *meaningful* opportunity for cross-examination. Iowa R.Crim.P. 13(1) does provide that after complaint, information, or indictment a defendant shall have the right to be present and cross-examine witnesses subpoenaed to testify under rule 5(6), and defendant was given that opportunity. However, even under a liberal construction of rule 5(6), defendant was justified in concluding that testimony obtained pursuant thereto would not be a deposition or other testimony that could be used as direct evidence at trial, and that it was therefore unnecessary to cross-examine the witness.

■ We conclude that rule 5(6) was not intended to be used as a device to allow the prosecution to perpetuate testimony for trial. Accordingly, we hold that the recorded testimony of Diane Nystrom did not constitute a deposition, and the trial court erred in admitting the testimony into evidence. We do not intimate that testimony obtained pursuant to rule 5(6) may never be used for trial purposes, however. Such testimony normally will be admissible for impeachment purposes. Moreover, agreement of the parties or full participation by a defendant with knowledge of the proposed use of the testimony in a rule 5(6) proceeding having safeguards normally accompanying a deposition would present considerations not before us in this appeal.

■ The State submits that the admission of the testimony was harmless error. It argues that the same evidence was admitted through testimony of other witnesses and the testimony of Diane Nystrom was therefore merely cumulative. We disagree.

In giving the sworn testimony that was admitted at trial, Diane Nystrom read into the record a written statement she had given to the police on January 26, 1978. The statement described in detail events that occurred from 3:45 p. m. until midnight on the day of the murders. This timetable of events included: statements

made by defendant; defendant's explanation of a scratch on the back of his hand; statements concerning an alleged figure running across the front yard of defendant's residence; and a description of defendant staying up all night armed with a shotgun and his explanation that it was for her protection. The State maintains that a police officer revealed these facts in testifying as to defendant's responses to inquiries concerning defendant's activities that evening.

Although the statements were similar, the transcript of Diane Nystrom's testimony contained more than cumulative evidence. The police officer's testimony was not as detailed. In addition, the transcript was a confirmation of defendant's admissions to the police officer. It had the effect of making a verity of statements that the jury otherwise might have considered suspect. The admission of the testimony was therefore prejudicial and constituted reversible error, requiring that defendant be granted a new trial.

III. *Sufficiency of evidence.* At the close of the State's case, defendant moved for a directed verdict of acquittal of the charges of first-degree murder, challenging the sufficiency of the evidence of premeditation, deliberation, and intent to kill. He contends the trial court erred in overruling the motion.

■■■■ We recently set out the principles we follow in reviewing a motion for a directed verdict based upon insufficiency of the evidence in criminal cases:

[W]e view the evidence in a light most favorable to the State. All of the evidence must be considered, *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980), and all legitimate inferences that may be deducted therefrom will be accepted. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). A trial court's refusal to direct a verdict for a defendant will withstand challenge if there is any substantial evidence in the record tending to support the charge. *State v. York,* 256 N.W.2d 922, 927 (Iowa 1977). Substantial evidence means such evidence as could con-

vince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson,* 288 N.W.2d at 339.

*State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). However, whether the evidence is direct or circumstantial, it must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. *State v. Schrier,* 300 N.W.2d at 308.

Defendant concedes that the essential elements of an offense may be established by inference from circumstantial evidence—that malice may be inferred from the use of a weapon in a deadly and dangerous manner, as may intent to kill. But he argues that under the evidence of this case premeditation or deliberation must be inferred from malice or intent to kill, which must be inferred from the use of a weapon in a deadly manner. Defendant thus contends that the jury had to make one inference the basis for another, which he claims is clearly improper under *State v. Leib,* 198 Iowa 1315, 201 N.W. 29 (1924).

Defendant's reliance on *Leib* is unfounded. This court has stated that

"the deliberate, violent use of a deadly weapon ... with opportunity to deliberate is evidence of malice, deliberation, premeditation, and intent to kill."

This is not making one inference the basis of another. . . . It is instead recognition of the fact that deliberation, premeditation and specific intent to kill, as is true of mental processes generally, are not ordinarily susceptible of direct proof but must be deduced from conduct and the circumstances accompanying it.

*State v. Christie,* 243 Iowa 1199, 1207–08, 53 N.W.2d 887, 891, *opinion modified,* 54 N.W.2d 927 (1952) (quoting *State v. Heinz,* 223 Iowa 1241, 1258–59, 275 N.W. 10, 20 (1937)).

■■■■ Premeditation and deliberation are essential elements of the first-degree murder charges involved in this case. *See* § 707.2(1), The Code. The State was there-

fore required to prove these elements beyond a reasonable doubt. *State v. Aldape*, 307 N.W.2d at 39, and cases cited therein. In *State v. Fryer*, 226 N.W.2d 36 (Iowa 1975), this court stated:

> To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Premeditation and deliberation may not be presumed. It may not be inferred from intent. However premeditation and deliberation need not exist for any particular length of time. In finding premeditation and deliberation the trier of facts may consider the fact a defendant has selected a deadly weapon, such as the gun involved here, with an opportunity to deliberate where he thereafter uses it in a deadly manner.

*Id.* at 41 (citations omitted). Thus, "the general rule is that one who arms himself with the express purpose of shooting another cannot ordinarily claim the elements of first degree murder are lacking." *State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976).

█ We find substantial evidence of premeditation, deliberation, and intent to kill. The evidence would permit the jury to find the following facts.

On the date of the murders, James Wilkins, a friend of defendant, observed a handgun at defendant's residence. He also overheard defendant state during a telephone conversation: "I'll be over in a little bit, Nick." Within two hours, Nick Pappas asked Douglas Millin to leave the premises after Cathy Larson told Pappas someone was there. As Millin left he observed defendant come from the front of the residence to move a car. Within a half hour Pappas and Larson were found dead in separate rooms in Pappas's house. Pappas had two bullet wounds in the back of his head. The wounds were surrounded by particles of gunpowder, indicating that he had been shot at close range. Larson had three bullet wounds, but no powder burns, which suggests that the shots were not fired from close range.

There was evidence that all of the wounds were caused by Smith and Wesson bullets fired from the same .38 caliber gun. Two .38 caliber Smith and Wesson bullets were found in the car defendant used on the date of the murder, and a spent .38 caliber shell casing, believed to be a Smith and Wesson, was found among the clothes defendant wore that day.

Viewing the evidence in a light most favorable to the State and drawing all reasonable inferences in favor of the verdict, there was substantial evidence that the defendant selected a deadly weapon and had an opportunity to deliberate before using it. Defendant had ample opportunity to deliberate from the time he left his residence with the gun until he entered the Pappas's residence prior to the fatal shootings. Nick Pappas was shot at close range, and there was no evidence of a struggle. It could be concluded that defendant then deliberately shot Larson to prevent her from testifying.

There was substantial circumstantial evidence to support the first-degree murder charges. The trial court did not err in submitting the charges to the jury.

IV. *Other issues.* Because we reverse the judgment of the trial court and remand this case for a new trial, we need not resolve the other issues raised by defendant.

Defendant claims the trial court erred in overruling his motion for a mistrial. The motion was based on surprise testimony of Dr. R. C. Wooters, the Polk County Medical Examiner, concerning an alleged confession by defendant. Now apprised, defendant may make the appropriate motion to suppress before retrial.

Defendant also raises issues concerning misconduct by a special investigator of the county attorney's office and by the jury. These matters should not reoccur.

**REVERSED AND REMANDED.**