STATE of Iowa, Appellee,

v.

C.D. CUNNINGHAM, a/k/a Dale Cunningham, Appellant.

No. 91–689.

Court of Appeals of Iowa.

Oct. 27, 1992.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Roxann M. Ryan, Deputy Atty. Gen., and William S. Owens, County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

OXBERGER, Chief Judge.

C.D. "Dale" Cunningham was the owner and administrator of the Residential Care Facility in Albia, Iowa beginning in 1989. The Albia facility was a health care facility as defined by Iowa Code section 135C.1. The Albia facility housed thirty to thirty-seven mentally ill, mentally retarded, and elderly residents. Cunningham recruited residents from state institutions to reside at the facility.

The Iowa Department of Inspections and Appeals (DIA) conducts routine annual inspections of facilities to monitor deficiencies. All inspections are unannounced. Deficiency statements are sent to the facility administrator.

Surveys were conducted at the Albia facility on October 6–7, 1989; December 5–12, 1989; January 29 to February 2, 1990; February 27 to March 1, 1990; March 20–22, 1990 and May 7–9, 1990. All of these surveys except for the one conducted in May 1990 resulted in a fifty dollar daily fine assessed against Cunningham for violations of regulations.

On June 29, 1990, a grand jury filed an indictment charging Cunningham with seven counts of wanton neglect of a resident of a health care facility in violation of Iowa Code section 726.7 (1989). The State filed a supplemental trial information on July 16, 1990, charging the same seven counts.

On August 16, 1990, Cunningham filed a motion to dismiss the trial information and indictment. Cunningham argued that terms "mental" and "moral" in Iowa Code section 726.7 are unconstitutionally vague and broad. On September 28, 1990, the State filed a motion to amend its supplemental trial information deleting the reference to "moral" injury from the charge. The district court overruled Cunningham's motion to dismiss and granted the State's motion to amend.

Cunningham waived his right to a jury trial and on March 12, 1991, the district court filed its ruling. The district court concluded that during the period of September of 1989 to June of 1990, Cunningham had knowledge of the dangerous conditions which existed at the Albia facility, but willfully and consciously refused to provide or exercise adequate supervision to remedy or to attempt to remedy the dangerous conditions. The district court concluded the residents were exposed to physical dangers, unhealthy, and unsanitary physical conditions and were grossly deprived of much needed medical care and personal attention. The district court concluded the conditions were likely to and did cause injury to the physical and mental well being of the residents. Based upon these conclusions, the district court found Cunningham guilty of five counts of wanton neglect of a resident of a health care facility.

Cunningham's motion for new trial was denied. On May 2, 1991, the district court entered judgment and sentenced Cunningham to jail for a period of one year on each of the five counts to run concurrently. The district court suspended all but two days of Cunningham's sentence and ordered him to pay a fine of $200 for each count, plus a surcharge and costs and to perform community service.

Cunningham appeals.

Scope of Review.

Our scope of review is for correction of errors at law. Iowa R.App.P. 4.

I. Sufficiency of Evidence.

Cunningham contends the district court erred in finding evidence sufficient to convict him of the charges.

The standard of review in challenging the sufficiency of the evidence is well established. *State v. Lampman*, 342 N.W.2d 77, 81 (Iowa App.1982). We will uphold a verdict where there is substantial evidence in the record tending to support the charge. *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981).

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the state, including legitimate inferences and presumptions that fairly and reasonably may be deduced from the evidence in the record. *State v. Hall*, 371 N.W.2d 187, 188 (Iowa App.1985); *State v. Bass*, 349

N.W.2d 498, 500 (Iowa 1984). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record, and not just the evidence supporting the verdict, to determine whether there is substantial evidence to support the charge. *Hall,* 371 N.W.2d at 188; *Bass,* 349 N.W.2d at 500. Substantial evidence means evidence which would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Hall,* 371 N.W.2d at 188; *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984).

The statute Cunningham was convicted under, Iowa Code section 726.7 (1989), provides:

> A person commits wanton neglect of a resident of a health care facility when the person knowingly acts in a manner likely to be injurious to the physical, mental, or moral welfare of a resident of a health care facility as defined in section 135C.1. Wanton neglect of a resident of a health care facility is a serious misdemeanor.

Cunningham was found guilty of knowingly acting in a manner likely to be injurious to the physical or mental welfare of a resident by creating, directing, or maintaining conditions which:

(1) constituted fire hazards and circumstances which impede safety from fire;

(2) resulted in failing to properly maintain the care center;

(3) were unsanitary and inadequate to meet the dietary needs of the residents;

(4) resulted from inadequate staff supervision; and

(5) resulted in administering improper dosages of medications to the residents.

■ Substantial evidence supported the district court's finding Cunningham responsible for creating or maintaining conditions which constituted fire hazards. Cigarettes stubs were found in a cardboard box in a resident's room. Burn holes were found in furniture and residents' clothing. Cigarette burns were also noted in no-smoking areas including resident rooms, shower rooms, and near mattresses located in the basement of the facility. Cluttered wood and paper were found near the open flame of a pilot light. A fire door was rusted and bent and would not close or latch. Electrical wiring was exposed in areas accessible to residents.

■ Substantial evidence supports the district court's finding Cunningham failed to properly maintain the facility. Broken glass was found in patients' rooms. Excessively hot water was present in faucets accessible to residents. The surveyors observed dried feces on the wall and grab bar of the public restroom. There were insufficient towels and bed linens. Dead and live cockroaches and worms were observed in food preparation areas. No soap was available in the kitchen area, and, at one point, only one bar of soap and one container of shampoo were found in the entire facility. Dust, debris, bugs, and grease were observed throughout the entire facility. The entire facility was in a general state of disrepair.

■ Substantial evidence was also presented to support the district court's finding Cunningham created, directed, or maintained conditions which were unsanitary and inadequate to meet residents' needs. In addition to previously noted conditions, the facility did not follow a diet ordering no concentrated sweets for a diabetic resident, thereby subjecting him to life-threatening variations in his blood-sugar level.

■ Cunningham also clearly failed to provide adequate staff supervision. No money was spent on employee training. Only one of three kitchen employees was properly trained. He did not spend the minimum amount of time at the facility as required by state administrative standards.

■ Substantial evidence was also presented to indicate Cunningham had directed and maintained conditions which resulted in inadequate dosages of medications

administered to patients. One patient received an ongoing overdose of heart medication. He later fell and sustained a fracture, but was never provided with the physical therapy his doctor ordered. A patient with a rash had cream prescribed which was not applied. A catheterized patient was not properly cleaned and irrigated, which resulted in a urinary tract infection and blood in the patient's urine, which indicates a kidney infection and possible kidney damage. Another patient suffered a seizure because his prescribed medication was not at therapeutic levels. Untreated conditions, such as herpes and skin lesions, were also noted.

Cunningham argues the evidence did not prove he "created" all of the above conditions. The statute does not require proof he created the conditions to sustain a conviction; he was administrator of the facility and responsible for the conditions present there. Also, he complains some of the conditions were subsequently corrected. Again, the statute does not require failure or refusal to remedy conditions to sustain a conviction. Substantial evidence supports Cunningham's conviction of each violation, and we affirm the decision of the district court.

## II. Denial of Motion to Dismiss.

Cunningham also claims the district court erred in failing to grant his motion to dismiss. He challenges the constitutionality of the statute, alleging the term "mental welfare" is vague.

One who challenges the constitutionality of a statute carries a weighty burden and must overcome a vigorous presumption of constitutionality. *State v. Bauer*, 337 N.W.2d 209, 210 (Iowa 1983). If a reasonable construction of the statute is possible, by construing the terms of the statute or by looking to prior case law, similar statutes, dictionary definitions, or general usage, then the statute is constitutional. *Id.* In order to pass constitutional muster, a penal statute must give a person of ordinary intelligence fair notice of the prohibited conduct and must provide explicit standards of enforcement in order to avoid arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227 (1972).

The "physical" welfare portion of the statute was upheld by our supreme court in *State v. McKee*, 392 N.W.2d 493, 495 (Iowa 1986). In *McKee*, the court utilized dictionary and case law definitions of each key term. *Id.* The court also noted it may apply the "normal everyday meaning" of the terms of the statute. *Id.*

"Mental" is defined as "relating to, or existing in, the mind, intellectual, emotional or psychic, as distinguished from bodily or physical." *Black's Law Dictionary* 882 (5th ed. 1979). By referring to *McKee* and the dictionary definition, we conclude the conduct prohibited under this statute is intentionally or willfully engaging in conduct which would probably cause emotional or psychological injury or harm.

In addition, we find the definition of "mental" provided is a normal everyday meaning and as such, gives sufficient warning of the prohibited conduct.

## III. Double Jeopardy.

Cunningham next contends his double jeopardy rights were violated by the imposition of both administrative penalties and a criminal fine. Cunningham was fined $26,000 following an administrative hearing. He was fined an additional $200 on each of the five counts for which he was adjudged guilty by the trial court. The State argues Cunningham failed to make adequate record on the nature of the DIA fine and as a result, waived the issue on appeal.

"If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court." *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721, 731 (1988). A fine can be so excessive that it does not serve a remedial purpose and may be declared punitive. *United States v. Halper*, 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487, 502 (1989). If

the fine can be characterized only as a deterrent or retribution, then it can be deemed criminal. *Id.*

■ We agree with the State's argument. Cunningham failed to make adequate record on the nature of the administrative fines. We are unable to determine whether they operated as a remedial fine or as a criminal fine. Failure to make a record constitutes waiver on appeal. *State v. Smith,* 228 N.W.2d 111, 112 (Iowa 1975). We hold Cunningham failed to make an adequate record on this issue and we are unable to address it on appeal.

IV. Ineffective Assistance of Counsel.

■ Finally, Cunningham contends he was denied his constitutional right to effective assistance of counsel. Specifically, he contends that if this court finds trial counsel failed to preserve error on any issues raised on appeal, his trial counsel was ineffective. We have found failure to preserve the double jeopardy issue for appeal.

Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for post-conviction proceedings so the facts may be so developed. *State v. Koenighain,* 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly ineffective attorney the opportunity to explain his or her conduct. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). We conclude there is an inadequate record for us to adjudicate the defense claim without counsel's explanation for his conduct. We therefore preserve defendant's ineffective assistance of counsel claim for a later proceeding.

We have considered Cunningham's contentions and are convinced the trial court was correct in its rulings.

AFFIRMED.