**STATE of Iowa, Appellee,**

v.

**Michael Lee WALKER, Appellant.**

**No. 83–541.**

Supreme Court of Iowa.

June 13, 1984.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen. and Michael Zenor, County Atty., for appellee.

WOLLE, Justice.

Defendant Michael Lee Walker was a juvenile seventeen years of age when he was arrested on suspicion of burglarizing a drug store. Less than three hours after he was arrested, and before either of his parents had visited with him, he gave the police officers an uncounseled signed inculpatory statement. Before trial in the district court on a charge of second degree burglary, defendant moved to suppress the statement and certain physical evidence which the police had seized from his residence pursuant to a search warrant. The motion to suppress was overruled, the signed statement and physical evidence were introduced at trial, and defendant was convicted and sentenced to a term of incarceration not to exceed ten years for burglary in the second degree. *See* Iowa Code §§ 713.1, 713.5, 902.9(3) (1981). In this direct appeal defendant contends that the inculpatory statement and physical evidence should have been suppressed because the police officers failed to meet the statutory requirements for obtaining a valid waiver of defendant's right to counsel. Defendant also contends that the court erred in refusing to submit criminal trespass as a lesser included offense in its instructions to the jury.

We conclude that defendant's uncounseled statement should have been suppressed, and we therefore reverse and remand.

On the morning of January 31, 1981, the manager of a drug store in Spencer, Iowa discovered that someone had fallen

through the false ceiling of the store. Footprints led to the pharmacy section of the store, but the manager found nothing missing. He did, however, find a pair of eyeglasses with one lens missing.

Police officers traced the eyeglasses to defendant, using a prescription showing him to be the likely owner, and defendant was arrested. Our disposition of this appeal is controlled by what occurred at the police station between 3:41 p.m. on January 26, 1983 when defendant was arrested and 6:00 p.m. that evening when he gave the officers his uncounseled written statement.

The arresting officer was aware that the defendant was only seventeen years old. The defendant was taken to the police station and placed in a conference room where he waited while the police attempted to contact the defendant's mother. The officer made approximately ten phone calls in an attempt to contact the mother, who had sole custody of defendant by reason of a dissolution decree. The officer learned that the mother was in Sioux City and called defendant's grandparents and the department of social services in an effort to locate her. At 4:30 p.m., less than an hour after he was arrested, the police officers obtained from defendant a written waiver of his right to counsel which included the following language:

> You cannot give up your right to have a lawyer with you to advise you during questioning by yourself. Your parents must also agree. They must do that in writing. Do you understand? Any questions?

Between 5:00 p.m. and 5:15 p.m., Officer O'Hara contacted the defendant's father at the restaurant where he worked and asked him if he knew where the defendant's mother was. The officer informed the father that his son had been arrested but did not tell him what the charge was or that the father had a right to speak and confer with his son. The father and the police officer disagreed as to one matter; the father testified that he told the officer he would come to the station shortly after 7:00 p.m., while the officer testified that the father merely told him he would be there after work without specifying a time.

Within an hour of that conversation with the defendant's father, and before either the mother or father had made any contact with defendant, the police officers obtained from defendant a written signed confession.

## I. Defendant's Uncounseled Inculpatory Statement.

■ Defendant challenges the validity of his waiver of the right to counsel on statutory rather than constitutional grounds. Iowa's Juvenile Code implements and goes beyond the constitutional right to counsel provided for juveniles by explaining the stages of proceedings when a child may be represented, the effect of denial of the right to counsel on statements offered in evidence, and the specific methods by which police officers may obtain a waiver of the child's right to counsel. Iowa Code section 232.11(1)(a) provides in part:

> A child shall have the right to be represented by counsel ... [f]rom the time the child is taken into custody for any alleged delinquent act that constitutes a serious or aggravated misdemeanor or felony under the Iowa criminal code, and during any questioning thereafter by a peace officer or probation officer.

Iowa Code section 232.45(9) provides that statements made by the child while in custody are admissible in evidence in subsequent criminal proceedings "provided that the statements were made with the advice of the child's counsel or after waiver of the child's right to counsel." The statute thereby adopts a *per se* exclusionary rule when a child has not effectively waived its right to counsel. *In the Interest of J.A.N.*, 346 N.W.2d 495, 498 (Iowa 1984); *State v. Aldape*, 307 N.W.2d 32, 35 (Iowa 1981) (dictum).

In this case defendant stakes his challenge to the validity of his waiver of counsel on Iowa Code section 232.11(2), which provides in pertinent part:

> The child's right to be represented by counsel under subsection 1, paragraph

"*a*" shall not be waived by a child less than sixteen years of age without the written consent of the child's parent, guardian, or custodian. The waiver by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

It is important to note that the statute distinguishes between juveniles less than sixteen years of age and juveniles, like defendant, who are at least sixteen. For children less than sixteen, the statute provides that no waiver of counsel is valid unless accompanied by the written consent of the parent. *See In the Interest of J.A.N.*, 346 N.W.2d at 499 ("The legislature has demanded that painstaking care must be taken to obtain parental consent before questioning a juvenile. The child can be expected to rely on the judgment of the consenting parent."). For the child who is at least sixteen years of age, the statute replaces written parental consent with the requirement that good faith efforts be made to notify the parent, guardian, or custodian and to provide the notified person with four explicit facts about the juvenile's circumstances: (1) "that the child has been taken into custody and" (2) "of the alleged delinquent act for which the child has been taken into custody," (3) "the location of the child, and" (4) "the right of the parent, guardian or custodian to visit and confer with the child." Iowa Code § 232.-11(2) (1983).

Defendant contends that the state failed to show that the officers made a good faith effort to inform defendant's father of all four facts specified in the statute, and we agree. When the father was contacted by the police officer, he was told that defendant was in custody at the police station, but that message satisfied only the first and third informational requirements. The father was not told the nature of the alleged delinquent act—burglary—nor was he told of his right to visit and confer with the defendant. No circumstances were present here which excused the officers from providing the defendant's father with all of the information required by the statute.

In denying defendant's motion to suppress, the trial court found that the State had met its burden to prove by a preponderance of the evidence that the police officers had made a good faith effort to notify both of defendant's parents. The trial court specifically excused the police officer's failure to tell the father the nature of the alleged delinquent act, relying on circumstances confronting the father when he received the officer's phone call. The father told the officer he was busy at work and would be unable to come right to the station. He may also have failed to tell the officer precisely when he would come to the station.

Even when these facts are viewed in the light most favorable to the State, we find the circumstances confronting the father inadequate to excuse the officer's failure to provide to the father all of the information which the statute requires. The statute listed very specifically the four items of information which the officers must make a good faith effort to convey to the contacted parent. In enacting this statute, our legislature apparently believed that each part of the four-part message would tend to impress upon a parent the importance of going to the side of the child and giving the child parental advice. Far from excusing the officer's inadequate message, the circumstances then confronting defendant's father made it even more imperative that the officer fully notify him concerning the child's circumstances. We certainly cannot presume that the father would not have gone to his child's side if he had fully understood both the seriousness of his son's situation (being arrested and accused of burglary) and what he as a parent had a right to do (visit and confer with the child).

■ The State argues that since "good faith effort" is not defined in the Iowa Juvenile Code, we should define that phrase to mean a subjective honest intention to abstain from taking unfair advantage. We need not here decide the outer limits of what "good faith effort" means in the statute, for at a minimum the statute as a whole requires both a good faith effort to contact a parent, guardian or custodian and a good faith effort to furnish the contacted person with all four parts of the substantive message specified in the statute. The notification requirements of Iowa Code section 232.11(2) were enacted in 1978. 1978 Iowa Acts ch. 1088. Even before its enactment, we had emphasized "the importance of securing for the minor under interrogation the advice and consultation of a parent, guardian, custodian, adult friend, or lawyer," stating that "[f]ailure to provide such support will throw a deep shadow of judicial distrust over the resulting confession." *In re Thompson*, 241 N.W.2d 2, 5–6 (Iowa 1976).

Our legislature has now explicitly provided a four-part message of notification for contacted parents. The statute requires that peace officers make a good faith effort to deliver that message to the contacted parent. We will not dilute the contents of that statutory message in circumstances like those confronting defendant and his father in this case. There is not substantial evidence in this case that the officer made a good faith effort to provide defendant's father with this information our statute requires. Consequently, the State did not meet its burden of proving by a preponderance of the evidence that the officers complied with the statute and obtained a valid waiver of counsel. *See State v. Aldape*, 307 N.W.2d at 36.

■ We also find that defendant did not validly waive his right to counsel because of the specific language contained in the waiver form which he read and signed. Apparently the form was designed only for juveniles under the age of sixteen years. It specifically and unequivocally stated that defendant could not give up his right to have a lawyer unless his parent also agreed in writing. The language of that form gave defendant the right which the statute provides only for juveniles under the age of sixteen years. A waiver for those juveniles is invalid "without the written consent of the child's parent, guardian or custodian." Iowa Code § 232.11(2) (1983). Defendant read the form before signing it, and it was also read to him. When asked if he understood his rights, the defendant replied that he did. We must infer that he thereby understood he had a right which could not be waived unless his parent also waived, and neither parent ever signed such a waiver.

■ Finally, the circumstances here suggest that the officers moved more rapidly than was reasonably necessary to obtain from defendant a signed waiver of counsel and the subsequent signed statement. The waiver was signed less than one hour after the arrest, the statement less than two hours later. Although the Juvenile Code only explicitly mentions a good faith effort to notify the parents, the statute implicitly requires that the officers wait a sufficient period of time after contact is made so the contacted parent may have a reasonable opportunity to come to the station and consult with the child before interrogation begins. *See Stokes v. State*, 371 So.2d 131, 132 (Fla.Dist.Ct.App.1979).

Defendant's inculpatory statement should have been suppressed and excluded from evidence at the trial because the State did not establish that it had obtained a valid waiver of his statutory rights.

II. *Validity of the Search Warrant.*

After the police officers obtained defendant's written statement, they obtained from a local magistrate a warrant to search the defendant's residence where he lived with his mother. Included in the evidence presented to the magistrate was a reference to the confession. The officers took the defendant to his residence and there seized the missing lens from his eyeglasses and a pair of shoes which defendant said he was wearing on the night in question.

Defendant moved to suppress the use of the lens and shoes as a part of the State's evidence, contending that, without reference to the invalid confession, the evidence in the application for a search warrant was insufficient to establish probable cause. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); *State v. Williams,* 285 N.W.2d 248, 256 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980); *State v. Cook,* 330 N.W.2d 306, 312 (Iowa 1983) (dictum). On examination of the sworn application for the search warrant, however, we find that the information presented to the magistrate was sufficient, even without the reference to a confession, to establish probable cause for issuance of the warrant. *See State v. Kase,* 344 N.W.2d 223, 226 (Iowa 1984). The affidavit showed that the eyeglasses found in the drug store matched an identical pair purchased by the defendant, and it disclosed that a reliable informant had told the police the defendant was seen after the night in question with bruises and bumps consistent with the type that a person would receive in a fall from the drug store's false ceiling. We therefore affirm the trial court's denial of defendant's motion to suppress use at trial of the lens and shoes obtained from defendant's residence pursuant to the search warrant.

### III. *Trespass as a Lesser Included Offense.*

Defendant also assigns as error the trial court's refusal to submit criminal trespass as a lesser included offense to the charge of burglary. Iowa Code section 713.1 (1983) provides that burglary can be committed in three alternate ways. *See State v. Wales,* 325 N.W.2d 87, 88 (Iowa 1982). Criminal trespass is a lesser included offense of the entering alternative but not of the breaking alternative which the State elected to rely on at trial. Iowa Code § 716.7(2) (1983); *see State v. Chase,* 335 N.W.2d 630, 634 (Iowa 1983); *State v. Wales,* 325 N.W.2d at 89. The State argues that the trial court correctly refused to instruct on criminal trespass as a lesser

included offense because defendant was tried only on the breaking alternative.

Although one part of the trial court's marshalling instruction explaining what the State was required to prove to establish burglary did inadvertently refer to "break or enter," neither party objected to that instruction. We need not here decide whether the failure to instruct on criminal trespass when there was that one reference to "enter" constituted reversible error, because we expect that on retrial there will be no such reference to the entering alternative of the crime of burglary.

The conviction must be reversed and the case remanded because the trial court should not have admitted in evidence defendant's uncounseled confession which had not been validly obtained.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C.J., and SCHULTZ and LARSON, JJ., who dissent.

SCHULTZ, Justice (dissenting).

Because I cannot agree with the majority's holding that defendant's confession was inadmissible, I respectfully dissent.

In the circumstances of this case, I would affirm the trial court's finding that the officers' efforts complied with Iowa Code section 232.11(2). I do not believe the officers moved too rapidly or that the record supports an inference that this particular defendant was confused by the written waiver he voluntarily executed. In sum, I would affirm the trial court's ruling denying defendant's motion to suppress his confession.

My first disagreement with the majority opinion concerns its overriding of the district court's finding of fact concerning compliance with section 232.11(2). The pertinent portion of this section prevents a child of sixteen years of age or older from waiving the assistance of counsel unless

a good faith effort has been made to notify the child's parent, guardian, or custodian the child has been taken into

custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

What does this section require from the officer? Plainly, it calls for a "good faith effort" by the officer to locate and inform the proper person. "Good faith" describes "that state of mind denoting honesty of purpose" and generally means "being faithful to one's duty or obligation." *Black's Law Dictionary* (5th Ed.1979). "Effort" is defined as "an attempt; an endeavor; a struggle directed to the accomplishment of an object." *Id.* A "good faith effort" does not require success. It requires an honest attempt to locate the person and pass on the required information. When the delivery of the message is thwarted by the recipient's outright refusal to accept the information, the requirements are met. Such a rebuff need not be an express rejection but may be inferred from the recipient's statements, actions and conduct. Whether or not a "good faith effort" has been made is an issue of fact for determination by the fact finder, here the trial court.

The trial court summarized the facts concerning the father's reception of the officer's phone calls to him as follows:

The fact that the officer did not specifically detail the nature of the alleged delinquent act under the circumstances in this case would not constitute a less than good faith effort to notify. It is apparent from the evidence that the defendant's father was very busy at the time he was contacted on the phone. He indicated he would be unable to get off work. He did not in any way indicate that he would come to the station to confer with his son or visit with him at any specific time. His reaction to the information given to him when he did come to the station indicates his lack of interest in conferring or visiting with his son in regard to the criminal or delinquent act involved in this case.

The trial court ultimately found that a good faith effort was made to notify the child's parents as required under Iowa Code section 232.11(2).

Without specifically stating its mode of review, the majority rejects this finding and makes an independent determination that the State did not meet its burden to prove its officers complied with the statute and obtained a valid waiver of counsel. Where a statutory violation is alleged, rather than a constitutional violation, de novo review is inappropriate. *See State v. Brant,* 253 N.W.2d 253, 256 (Iowa 1977).

In reviewing the trial court's disposition, we accord its fact-findings the effect of a jury verdict. *See State v. York,* 293 N.W.2d 13, 14 (Iowa 1980). We examine all the evidence in the light most favorable to the State, accept all legitimate inferences that may reasonably be deducted thereon and uphold the findings if there is any substantial evidence in the record to support it. *E.g., State v. Rich,* 305 N.W.2d 739, 741 (Iowa 1981). Guided by these principles, a review of the record is in order.

The facts demonstrate a concerted effort to locate and notify the parents. Defendant arrived at the police station at 3:41 p.m. The police knew the defendant, age seventeen and one-half, was in the sole custody of his mother. They took steps to locate her by calling her home ten times. When they learned that she might be in Sioux City seeking advice concerning drug rehabilitation treatment for the defendant, they unsuccessfully tried to contact the Department of Social Services since they thought the Department secured a ride for her or knew her designation. They contacted her parents, who only knew that she had gone to Sioux City. They also dispatched a car to her home without success.

The officer knew of the father, but was not aware he was in town. On a previous arrest, only the mother had been contacted. Defendant told the officer where his father was employed, and at 5:00 p.m. the officer called him. He was an employee of the local Hardee's restaurant that is normally

open until 11:00 p.m. or midnight. When they contacted Mr. Walker, he indicated that he could not possibly leave work and expressed no interest in talking to his son. He did say he would come down after work. The officer indicated that the father did not specify the time, and he was not sure the father would show up.

The communication between the officer and the father and the impressions made on the officer by the father are important in our determination of the sufficiency of the evidence. Defendant's father in his testimony described the call as follows:

Q. Did you ask what offense had been charged?

A. No. All I know is that—because we are busy at the time, when you are working like that they won't let you—you are not allowed to have any. Unless it is a real emergency they won't let—allow you to have any kind of calls.

Q. Okay. But you didn't ask what offense he had been charged with?

A. All I know is they told me they picked him up.

Q. And you were in a hurry to get off the telephone?

A. Yes, because it is a rush.

Q. Because it was a rush?

A. Between 5:00 and 7:00 there is always a pretty good rush at Hardee's.

Q. But they did ask you to come down; right?

A. Yes. I said I would be down there shortly after I got off work.

The officer testified concerning the impressions he received from the father as follows:

Q. Mr. Walker testified, I believe, that you called at a time when he was busy?

A. Yes, sir.

Q. Did you get that impression?

A. Yes, sir. This was my impression.

Q. Did Mr. Walker seem to want to stay on the phone and talk to you about this?

A. No, sir.

Q. Other than saying he would come down after work, whenever that might be, did he make—did he express any interest at all in what was going on?

A. No, sir. My impression was that he really didn't care.

Q. And he did refuse to come even though you asked him?

A. At that particular time; yes, sir.

The officer's impression of disinterest and lack of care was later confirmed. When the father did come to the police station at approximately 7:30 p.m. and was informed of the actual charge, he did not exercise his right to visit with his son because he did not want to see him.

After a phone conversation with the father, the officer consulted with his superiors and the county attorney. These individuals decided that a good faith effort had been made to comply with the statutory requirements. With this assurance, at approximately 6:00 p.m., the officer confronted defendant with his glasses that were found in the burglarized drug store. Defendant had previously been advised of his "*Miranda* rights" and at this time made admissions and signed a written statement.

I would not hold as a matter of law that the officer failed to make a good faith effort to notify both parents as required by section 232.11(2). The mother was unavailable. It is clear the father's first concern was his job. He made it plain that he had little interest in visiting and conferring with his son. Although the officer did not specify the charge against the defendant, the totality of the evidence shows the father did not wish to take the time from his work to discuss this matter and that detailing the charge would not have resulted in an immediate visit by the father with the defendant. The trial court could properly infer that the officer in good faith attempted to comply with section 232.11(2) but was thwarted from completing his message by

the father's indifference to his son's plight and his preoccupation with his work.

Additionally, I do not agree with the majority's assessment that the officers moved more rapidly than was reasonably necessary. They made extensive efforts to notify both parents and took the statement over two hours after defendant was taken into custody. They did not know when the mother would appear. They did not know when the father's shift ended or even if he would appear. In these circumstances, I believe the trial court correctly determined that the State met its burden of compliance with the statute.

Finally, the majority holds that the defendant did not waive his right to counsel because the police officers made an error in obtaining the waiver. The officers had the child execute a printed acknowledgement of his rights which included an admonition that he could not give up his right to have his lawyer present during questioning. This is a right that is presently available to children under 16 and formerly was available to all juveniles until amendment of section 232.11(2). *See* Acts 1982 (69 G.A.) Chapter 1209, section 2. The majority indicates we must infer that he understood he had a right that could not be waived unless the parent also signed the waiver. Stated otherwise, defendant did not understand his rights and could not waive them due to this misinformation. I cannot agree with this conclusion for two reasons.

First, nowhere in defendant's brief does he raise any issue concerning the voluntariness of either his waiver of rights or his confession. Rather, his attack is confined to the State's failure to comply with the requirements of section 232.11(2). The majority has ruled on an issue that defendant has not raised.

Secondly, the totality of the evidence shows that defendant knowingly and intelligently waived his right to counsel and to remain silent. Defendant is experienced with dealing with the police and the courts. He was in juvenile court at age 12, has been under juvenile court supervision and has been arrested several times before.

He had the benefit of court-appointed counsel in prior court hearings. The trial court found he was of normal intelligence, and he possessed a G.E.D. He himself testified that he is aware of his right to counsel and is familiar with the "*Miranda* Rule" and his rights under this doctrine. His probation officer testified that his rights had been given to him eight to ten times. Additionally, defendant stated that he was not coerced and voluntarily wrote out his own statement. I find nothing in the record to indicate he was confused. There is no justification for an inference that he misunderstood his rights.

In summary, since I agree with the trial court's ruling on the motion to suppress and find no error in the trial court's refusal to instruct on trespass, I would affirm defendant's conviction.

REYNOLDSON, C.J., and LARSON, J., join in this dissent.