**In the Interest of D.J.K. a Minor.**

**No. 85–1473.**

Supreme Court of Iowa.

Dec. 17, 1986.

John S. Pieters of Pieters & Pieters, Waterloo, for appellant child.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., and James Metcalf, Co. Atty., for appellee State.

Considered by HARRIS, P.J., and McGIVERIN, WOLLE, LAVORATO and NEUMAN, JJ.

NEUMAN, Justice.

In this application for further review, the State asks us to reconsider a court of appeal's decision which held that a juvenile's uncounseled confession was inadmissible due to the State's failure to comply with the waiver requirements of Iowa Code section 232.11(2) (1985). At issue is the *timing* of a law enforcement officer's notification of crucial information to the child's parent and legal guardian: If the proper notification is made in anticipation of a purely investigatory interrogation, does that same notice suffice when the interrogation becomes custodial? The court of appeals interpreted the plain language of the statute to draw a distinction between these two circumstances. We concur in its analysis and reverse the trial court.

In June 1984, a petition for delinquency was filed in Black Hawk County, alleging that D.J.K. (Danny), a sixteen-year-old juvenile with a history of emotional and learning disabilities, had sexually assaulted a nine-year-old retarded boy while both were riding home from school on the "exceptional person's" bus. Following a trial in juvenile court, Danny was found guilty of the delinquent act of sexual abuse in the second degree in violation of Iowa Code section 709.3(2) (1983). The evidence to support the adjudication consisted of the eyewitness testimony of another bus passenger, also mentally handicapped, and Danny's written confession. Prior to trial, Danny's counsel filed motions to suppress which challenged both the eyewitness' competency and the admissibility of Danny's confession. After evidentiary hearing, the motions were overruled. It is from these rulings and the juvenile court's subsequent adjudication that Danny appeals.

## I. *The competency of the eyewitness.*

The decision with respect to the competency of a witness rests within the sound discretion of the trial court and we will reverse only when an abuse of that discretion is shown. *State v. Whitfield,* 315 N.W.2d 753, 755 (Iowa 1982); *Calvert v. State,* 310 N.W.2d 185, 187 (Iowa 1981). Iowa Rule of Evidence 601 governs the trial court's determination and provides that "[a] person of sufficient capacity to understand the obligation of an oath or affirmation is competent to be a witness except as otherwise provided by rule or statute."

The witness in this case was a twenty-seven-year-old mentally handicapped woman employed by Goodwill Industries. During the course of an in camera examination of both the witness and her father, counsel posed questions concerning the witness' ability to distinguish between truth and falsity, and her general capacity to accurately relate the events she allegedly witnessed. Her answers revealed a fundamental understanding of her obligation to answer questions truthfully. Her father confirmed her general history of reliability in reporting events, pointing to the consistency with which she had related the incident in question to him, her mother, police investigators and her employer. Although she displayed some obvious confusion in response to questions concerning more abstract concepts, we are convinced from an overall examination of the record that the trial court did not abuse its discretion when it determined that she was sufficiently competent to testify. Appellant's assertion to the contrary is without merit.

## II. *Admissibility of the confession.*

We begin our analysis of this issue with a chronology of events leading up to Danny's interrogation and subsequent confession. On May 31, police officer John Sewick phoned Danny's natural mother and informed her of the nature of the incident being investigated, the reason for the investigation and "what the situation was".

Apparently, the mother neither gave nor denied the officer permission to talk to the child. She simply referred the officer to Danny's social worker, Sharon Wright. Ms. Wright, in turn, referred the officer to an attorney previously assigned the child by the juvenile court in a CHINA proceeding, Melvin Wolf. Officer Sewick called Mr. Wolf and explained the situation to him. Wolf gave him permission to talk to the child, and stated that he did not think it necessary that he be at the questioning.

Officer Sewick then called Danny's foster mother, Mary Schneider, and arranged to have Danny brought in for questioning the next day. He told Mrs. Schneider that Danny had allegedly been involved in a sexual assault about a week earlier. She asked the police officer if the social worker should be at the questioning. He told her it would not be necessary. Mrs. Schneider, concerned about the questioning, called attorney Wolf who confirmed that he would not be present at the questioning.

The following morning, Mrs. Schneider took Danny to the police station for questioning. A conversation that took place between Mrs. Schneider and officer Sewick will be detailed later in this opinion. Removed from the presence of his foster mother, Danny was advised of his *Miranda* rights and within five minutes had given officer Sewick a statement confessing his participation in the alleged assault.

We examine Danny's challenge to the admissibility of this uncounseled confession in the light of two pertinent provisions of our juvenile code, section 232.47 and section 232.11(2), most recently interpreted by this court in *State v. Walker*, 352 N.W.2d 239 (Iowa 1984).

Section 232.47 provides that evidence derived directly or indirectly from statements which a child makes to a law enforcement officer while in custody without presence of counsel may be admitted into evidence at an adjudicatory hearing over the child's objection only after the court determines whether the child has voluntarily waived the right to remain silent. Nearly identical language found in section 232.45(9) pertaining to statements made by children over whom the juvenile court has waived jurisdiction has been interpreted by this court to constitute a *per se* exclusionary rule when a child has not effectively waived its right to counsel. *State v. Aldape*, 307 N.W.2d 32, 35 (Iowa 1981); *In the Interest of J.A.N.*, 346 N.W.2d 495, 498–99 (Iowa 1984).

The validity of Danny's waiver, as a sixteen-year-old, is measured by the following specific requirements prescribed in section 232.11(2):

> The waiver by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

In *Walker*, 352 N.W.2d at 242, we concluded that in enacting this statute, our legislature apparently believed that each part of the four-part message would tend to impress upon a parent the importance of going to the side of the child and giving the child parental advice. We refused to "dilute the contents of that statutory message" when we found that law enforcement officers had not conveyed to the defendant's father all of the information the statute required. *Id.* at 243.

The case now before us presents a variation on the theme begun in *Walker*. Here, officer Sewick notified not only Danny's natural mother, but his social worker, former lawyer and foster mother of his desire to question Danny concerning the events on the school bus. Applying the standards set out in section 232.11(2) and the reasoning of *Walker*, the trial court made the following findings:

> The court finds that Det. Lt. Sewick made a good faith effort to comply with section 232.11(2) of the Iowa Code prior to actually questioning the juvenile relative to the allegations. He was referred by the juvenile's natural mother to the

juvenile's social worker and then to the juvenile's attorney. He provided the social worker and the juvenile's foster mother with information as to (1) when the child would be questioned, (2) the alleged delinquent act, and (3) where the child would be questioned. Since the juvenile was in the foster mother's care and was to be transported to the sheriff's office by the foster mother, it was not necessary to advise her that she had the right to visit with and confer with the juvenile.

Conspicuously absent from the trial court's reasoning, however, is any consideration of the statute's emphasis on notification *that the child has been taken into custody.* Indeed, when officer Sewick made the requisite contacts, the child was *not* in custody nor was the possibility of arrest or detention even mentioned. Danny's presence at the police station was secured upon the premise that officer Sewick wished to question him about the alleged incident. Nevertheless, immediately upon his presentation at the police station, Danny was advised of his *Miranda* rights and within five minutes had given his inculpatory statement, without benefit of legal or parental presence or advice.

This transition, from what had been characterized as a purely investigatory interrogation to one that was clearly custodial in nature, triggered anew the notification requirements of section 232.11(2) and rendered Danny's subsequent confession inadmissible in the absence of statutory compliance. *See In Interest of J.A.N.,* 346 N.W.2d 495, 499 (Iowa 1984).

The State urges us to find that the spirit of the statute, as well as its language, was clearly met by the police officer in this case. However, the importance of our strict adherence to the language of section 232.11 is illuminated by the uncontroverted trial testimony of Danny's foster mother, describing her conversation with officer Sewick just prior to his questioning Danny:

Q. When you took Danny in the next day, you were still concerned about him talking to the police, weren't you? A. Yes, without the presence of either his social worker or his attorney.

Q. And did you make any questions of the police officers at that time about other people being present while Danny gave the statement? A. Yes, I did.

Q. Who all did you ask about the possibility of being present while the statement was being given? A. I asked him about Sharon Wright, Danny's social worker, if she should not be there.

Q. What did he say to that? A. It wasn't necessary at that point.

Q. And who else? A. And I asked him should not his mother be notified and be there.

Q. And what did he say to that? A. He said he didn't think it was necessary. It would only upset her and as from what he knew about it, there had been very minimal contact between Danny and his mother.

Q. Anyone else you asked about being present? A. I asked again about his attorney being present.

Q. And what was the response to that? A. It wasn't necessary at that time. That is, you know, he told me that Melvin Wolf had told him it wasn't necessary, and that his social worker had said it wasn't necessary for her to be there.

Q. Did you ask if you could go in with him? A. Yes, I did.

Q. What did he tell you? A. That he felt that Danny would be more open— that sometimes the kids communicated better with them if there was no one else present.

Q. To your knowledge, did Lt. Sewick try to contact anybody then ahead of the questioning? A. No.

. . . .

Q. Okay. Now, so the questioning took place and then after the questioning what happened in regard to the procedures they followed? A. Well, after they took his statement, Lt. Sewick came out and told me that Danny had admitted doing it. Danny had said he had almost told me about it yesterday, but he was concerned about what I would think.

It is precisely this tactic of separating the juvenile from the person upon whom he would rely for advice that the statute is designed to guard against. Not only did the officer fail to notify Danny's parent, guardian or custodian of their right to visit and confer with him once he was in custody, he deliberately discouraged Danny's closest caretaker, his foster mother of five years, from being at his side during the questioning.

Because Danny's statement was procured by the State *after* he was in custody and without a good faith effort on the part of the investigating officer to notify Danny's parent or legal guardian of that custodial status, we conclude that the statement was obtained in violation of the strict requirements of section 232.11 and must be suppressed. Accordingly, we need not address the other challenges to the voluntariness of the statement raised by the appellant.

DECISION OF THE COURT OF APPEALS AFFIRMED; DISTRICT COURT REVERSED AND REMANDED.